**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 31 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

vs.

GUADALUPE MARQUEZ,

    Defendant - Appellant.

No. 02-3317

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 02-CR-10024-WEB)**

---

Brent I. Anderson, Assistant United States Attorney (and Eric F. Melgren, United States Attorney, on the brief), Wichita, Kansas, for Plaintiff - Appellee.

Steven K. Gradert, Assistant Federal Public Defender (and David J. Phillips, Federal Public Defender, on the brief), Wichita, Kansas, for Defendant - Appellant.

---

Before **SEYMOUR**, **KELLY**, Circuit Judges and **SHADUR**[*], District Judge.

---

**KELLY**, Circuit Judge.

---

[*]The Honorable Milton I. Shadur, Senior District Judge, United States District Court of the Northern District of Illinois, sitting by designation.

Defendant-Appellant Guadalupe Marquez entered a conditional plea of guilty to one count of possession with intent to distribute more than 100 kilograms of marijuana, 21 U.S.C. §§ 841(a), (b)(1)(B), reserving his right to appeal the district court's order denying his motion to suppress. The district court sentenced him to 41 months of imprisonment followed by a three-year term of supervised release. In so doing, the district court granted a two-level reduction of his base offense level for acceptance of responsibility under U.S.S.G. § 3E1.1(a)(2001), but declined to reduce the offense level by an additional level under § 3E1.1(b).

On appeal Mr. Marquez argues that the district court erred in denying his motion to suppress because (1) the search of his recreational vehicle ("RV") exceeded the scope of his consent, and (2) the search was unsupported by probable cause. In addition, Mr. Marquez argues that the district court erroneously declined to grant the third-level reduction under U.S.S.G. § 3E1.1(b). Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we affirm in part and reverse in part.

Background

In February 2002, an officer with the Kansas Highway Patrol ("the officer") stopped to offer assistance to two men who were working on the engine of an RV

in the parking lot of a sandwich shop in Colby, Kansas. The conversation that ensued was recorded by a microphone worn on the officer's uniform and a video camera mounted in his patrol car. The officer asked whether the men required assistance and Mr. Marquez responded by informing him of the nature of the engine problems they were experiencing and inquiring whether there were any mechanics located nearby. In response to further questioning, Mr. Marquez indicated that he was a Mexican citizen who had resided in California for the past 17 years, that he was going to Boston, Massachusetts for a two-month vacation, and that his passenger was out of work. The officer thereafter wished the two men well on their vacation and began to walk away when he quickly returned and asked if they would be willing to answer a few more questions.

After he reinitiated the conversation, the officer asked Mr. Marquez if there were any guns or drugs in the RV. After Mr. Marquez responded in the negative, the officer asked if he could search the vehicle. Mr. Marquez agreed, and after retrieving the keys from the front seat of the vehicle and unlocking the RV's door, he motioned with his hand for the officer to enter. The officer testified that upon entering the RV he saw no toiletries of any kind, no clothes in the closets, no food in the refrigerator, and that the refrigerator was not operating. He thereafter inspected a bench seat on the passenger side of the RV that was covered with a removable cushion. The officer testified that he knew from experience that such

benches often double as storage areas, and after removing the cushion he discovered a piece of plywood that had been nailed down to the bench. Based on the lack of amenities in the RV, Mr. Marquez's indication that he was on a two-month vacation, and the suspicious condition of the storage bench, the officer suspected that the two men were transporting drugs and therefore decided to attempt to gain access to the compartment.

The officer thereafter exited the RV to retrieve some tools to assist in opening the compartment. Before he had a chance to return to the RV, a deputy with the Thomas County Sheriff's Department ("the deputy") arrived on the scene to see whether he could be of assistance. After explaining the situation to the deputy, the officer and the deputy re-entered the RV and began to remove the nailed-down plywood covering. The deputy testified that upon entering the RV he could smell the odor of raw marijuana. II R. Doc. 39 at 62. After the officer showed the deputy the storage bench, the officer used a screwdriver to pry off the plywood covering, which revealed a second, newer piece of wood that was secured to the bench with screws. Id. at 22-23. After unscrewing the second piece of wood with an electric drill, they discovered several packages of marijuana and placed both men under arrest. Id. at 23.

In his motion to suppress Mr. Marquez argued, *inter alia*, that the search of the RV exceeded the scope of his consent when the officer pried open the nailed-

down covering on the storage compartment. The district court disagreed, holding first that the search did not exceed the scope of Mr. Marquez's consent because, under Florida v. Jimeno, 500 U.S. 248, 252 (1991), a general consent to search extends to containers that could contain contraband, and Mr. Marquez did not limit the search or otherwise object to the search of the compartment. I R. Doc. 22 at 13. Moreover, the district court found that there was no evidence that the removal of the plywood damaged or destroyed either the plywood or the compartment, and that the search was therefore not beyond the scope of the consent under United States v. Osage, 235 F.3d 518, 521 (10th Cir. 2000). I R. Doc. 22 at 13. Additionally, the district court stated that it was persuaded that the deputy detected an odor of marijuana prior to attempting to remove the nailed-down piece of plywood, and that the officers therefore had probable cause to believe that the compartment contained drugs. Id. at 12.

On May 13, 2002, one week after the district court denied his motion to suppress, Mr. Marquez entered a conditional guilty plea to one count of possession with intent to distribute more than 100 kilograms of marijuana. The presentence report ("PSR") concluded that Mr. Marquez was eligible for a two-level reduction of his offense level for acceptance of responsibility under U.S.S.G. § 3E1.1(a), but that a three-level reduction under § 3E1.1(b) was not warranted because he did not plead guilty in a timely manner or timely provide

complete information concerning his involvement in the offense. Mr. Marquez objected, arguing that he timely notified the government of his intent to plead guilty and that he timely admitted his involvement in the offense and "described everything he knew about the case to the law enforcement personnel when he was first apprehended." IV R. at 12, ¶ 67.[1] The district court declined to reduce Mr. Marquez's offense level by an additional level, and this appeal followed.

## Discussion

1.     The Motion to Suppress

Mr. Marquez challenges the denial of his motion to suppress on the ground that the district court erroneously concluded that (1) the search of the storage

---

[1] Mr. Marquez also objected to the PSR's failure to make a determination of his eligibility to receive a sentence below the applicable statutory minimum sentence under the "safety valve" provision of U.S.S.G. § 5C1.2. IV R. at 13. At the sentencing hearing, the district court orally granted the safety valve reduction. III R. Doc. 41 at 10. Moreover, the judgment reflects that Mr. Marquez's sentence took into account a reduction under § 5C1.2. I R. Doc. 28 at 2. However, in a sentencing order filed nearly one month after Mr. Marquez was sentenced, the district court stated that it was denying Mr. Marquez's request for "an additional one level reduction under the 'safety valve' provisions of USSG 5C1.2." I R. Doc. 36 at 1. Notwithstanding the district court's reference to § 5C1.2, it is clear from the sentencing order that the district court did not intend to reverse its prior holding that the safety valve provision applied and that it mistakenly cited § 5C1.2 in making its ruling. For that reason, and because an oral pronouncement of sentence from the bench controls over other written language, see, e.g., United States v. Young, 45 F.3d 1405, 1417 (10th Cir. 1995), we need not remand the case to the district court to determine whether it intended to apply the safety valve provision in Mr. Marquez's case.

bench was within the scope of his consent, and (2) the search of the RV was based on probable cause. In reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the government, accept the district court's findings of fact unless clearly erroneous, and review the ultimate determination of reasonableness under the Fourth Amendment de novo. United States v. Higgins, 282 F.3d 1261, 1269 (10th Cir. 2002).

When law enforcement officers rely upon consent to justify a warrantless search, the scope of the consent determines the permissible scope of the search. Jimeno, 500 U.S. at 251-52. In Jimeno, the Supreme Court held that a search of a container within a vehicle does not exceed the scope of a suspect's consent to search "when, under the circumstances, it is objectively reasonable for the officer to believe that the scope of the suspect's consent permitted him to open a particular container within the automobile." Id. at 249. Alternatively, the Court stated that, absent an objection by the suspect, an officer does not exceed the scope of a suspect's consent "if his consent would reasonably be understood to extend to a particular container." Id. at 252. Consequently, the Court framed the issue before it as whether it was reasonable for the officer to consider the suspect's general consent to search his vehicle to include consent to search a paper bag that was lying on the floor of his car. Id. at 251. Accordingly, we must determine whether it was reasonable for the officer to consider Mr. Marquez's

consent to search his RV as extending to the storage compartment at issue. We hold that it was.

In arguing that the search of the compartment exceeded the scope of his consent, Mr. Marquez makes much of the statement in Jimeno that although it would be reasonable to conclude that a general consent to search a vehicle includes consent to search a paper bag located therein, "[i]t is very likely unreasonable to think that a suspect, by consenting to the search of his trunk, has agreed to the breaking open of a locked briefcase within the trunk." Id. at 251-52. From this, Mr. Marquez argues that "it is unlikely and unreasonable to conclude that he would have wanted [the officer] to rip nails out of his seating area which contained the contraband . . . . It was an act that is more akin to breaking into a locked suitcase." Aplt. Br. at 7-8.

Of course, the test for determining the scope of a suspect's consent is not whether the suspect "would have wanted" an officer to search a container that contained contraband. If such were the test, we would be obliged to suppress the evidence in this and every other case involving a defendant who did not wish to be caught transporting narcotics. On the contrary, the proper inquiry is whether it would be objectively reasonable for a law enforcement officer to conclude that a suspect's general consent to search extends to a particular container in a car, see Jimeno, 500 U.S. at 251, not whether a suspect would conclude that the search of

- 8 -

a container is reasonable.

Moreover, the fact that the compartment here could be considered "more akin" to a locked briefcase than to a paper bag on the floor of a vehicle does not compel a holding that the search of the compartment here exceeded the scope of Mr. Marquez's consent. Neither analogy is particularly apt. For one thing, the compartment is unlike a locked briefcase in the sense that it constituted an integral part of the vehicle that was searched. This fact is significant in construing the scope of Mr. Marquez's consent inasmuch as his consent pertained to the RV, which of course included the storage compartment at issue. Moreover, in upholding the search of the container in Jimeno, the Supreme Court found it significant that the officer had informed the suspect that he wanted to search the car for narcotics. In this regard, the Court stated that:

> We think that it was objectively reasonable for the police to conclude that the general consent to search respondents' car included consent to search containers within that car which might bear drugs. A reasonable person may be expected to know that narcotics are generally carried in some form of a container. Contraband goods rarely are strewn across the trunk or floor of a car. The authorization to search in this case, therefore, extended beyond the surfaces of the car's interior . . . .

Id. (quotations and citations omitted). The same thing can be said about the search at issue here. The videotape of the search reveals that Mr. Marquez gave his consent to search after denying that he had either drugs or guns in the RV, and only after the officer specifically asked if he could search for guns or drugs. VI

R. (videotape). Because narcotics could have been secreted in the storage compartment, we believe it was reasonable for the officer to conclude that the scope of Mr. Marquez's consent extended to the search of that particular container. See United States v. Ramstad, 308 F.3d 1139, 1146-47 (10th Cir. 2002) (noting that where officer has indicated his intent to search for drugs or contraband, a suspect's consent "certainly implies that the officer could look wherever drugs might be hidden."). Furthermore, at no time did Mr. Marquez limit the scope of his consent to search the vehicle or otherwise indicate that he did not wish the officers to search the compartment, a fact this court has often found significant in determining whether a law enforcement officer has exceeded the scope of a suspect's consent. See, e.g., United States v. Gordon, 173 F.3d 761, 766 (10th Cir. 1999) ("We consistently and repeatedly have held a defendant's failure to limit the scope of a general authorization to search, and failure to object when the search exceeds what he later claims was a more limited consent, is an indication the search was within the scope of consent.").

In arguing that the search of the compartment exceeded the scope of his consent, Mr. Marquez also relies heavily on United States v. Osage, 235 F.3d 518 (10th Cir. 2000). In Osage, we held that "before an officer may actually destroy or render completely useless a container which would otherwise be within the scope of a permissive search, the officer must obtain explicit authorization, or

have some other, lawful, basis upon which to proceed." Id. at 522. Osage is inapposite, however, as that case involved the opening (and destruction) of a can of tamales contained in a suitcase belonging to a train passenger who had consented to a search of the suitcase. Here, the district court found that there was "no evidence that the officers' removal of the plywood damaged or destroyed the storage container or the plywood covering." I R. Doc. 22 at 13. If damage to the compartment did occur, it was de minimis in nature, and well short of the type of "complete and utter destruction or incapacitation" that was the focus of our concern in Osage. 235 F.3d at 522. We therefore reject the argument that the officer exceeded the scope of Mr. Marquez's consent based on any damage inflicted upon the compartment.

We are satisfied that it was objectively reasonable for the officer to conclude that the consent to search given by Mr. Marquez extended to the storage compartment at issue. Mr. Marquez consented to the search of the RV, the storage compartment was an integral part of the RV, the compartment could have contained narcotics, and Mr. Marquez did not limit the scope of his consent. We are therefore presented with a situation not much different than the situation presented in several of our cases upholding an officer's partial dismantling of an automobile pursuant to a general consent to search when the suspect did not object. See United States v. Pena, 920 F.2d 1509, 1515 (10th Cir. 1990)

- 11 -

(unscrewing and removal of rear quarter panel vent not beyond scope of suspect's consent in absence of objection by suspect); United States v. Santurio, 29 F.3d 550, 553 (10th Cir. 1994) (unscrewing strip holding down interior carpet and removing carpet not beyond scope of consent to search); United States v. Espinosa, 782 F.2d 888, 892 (10th Cir. 1986) (upholding removal of back seat of vehicle in absence of objection by the suspect). We therefore conclude that the district court properly held that the officer did not exceed the scope of Mr. Marquez's consent by searching the compartment.[2]

2.    The Third-Level Reduction Under U.S.S.G. § 3E1.1(b)

Mr. Marquez also argues that the district court erred in denying his request for an additional offense level reduction for acceptance of responsibility under U.S.S.G. 3E1.1(b). Mr. Marquez has the burden of establishing his entitlement to this additional decrease in his offense level by a preponderance of the evidence. United States v. Heredia-Cruz, 328 F.3d 1283, 1288 (10th Cir. 2003). We review a district court's legal conclusions under the Sentencing Guidelines de novo, and review its findings of fact for clear error. Id. The question of whether a defendant is entitled to an additional offense level reduction under § 3E1.1(b) is a question of fact. Id. at 1289.

---

[2] In light of this conclusion, we need not address the issue of whether the officer had probable cause to search the compartment.

- 12 -

Under U.S.S.G. § 3E1.1(a), a defendant who "clearly demonstrates acceptance of responsibility for his offense" is entitled to a two-level reduction in his offense level. Moreover, such a defendant may obtain an additional one-level reduction if:

> [T]he defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level **16** or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps:
>
> (1) timely providing complete information to the government concerning his own involvement in the offense; or
>
> (2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently . . . .

U.S.S.G. § 3E1.1(b).

At the sentencing hearing Mr. Marquez objected to the PSR's failure to recommend a third-level reduction under § 3E1.1(b)(1) on the ground that he disclosed everything he knew about the offense to the authorities at the time of his arrest, and that he was entitled to a reduction under § 3E1.1(b)(2) because he timely notified the government of his intent to plead guilty. III R. Doc. 41 at 5-6. As to his request for a reduction under § 3E1.1(b)(2), the district court found that a reduction under that provision was not warranted because (1) Mr. Marquez entered his guilty plea "on the eve of trial," and (2) he pleaded guilty only after a

long suppression hearing that required the attendance of nearly all of the government's witnesses. I R. Doc. 36 at 1. Likewise, the district court denied Mr. Marquez's request for a reduction under § 3E1.1(b)(1),[3] holding that "defendant is not entitled to such additional reduction because he has not provided any information as to where or when he obtained the marijuana, and the names of the persons who were to receive the shipment." Id. at 1-2.

We first address Mr. Marquez's argument that he is entitled to an additional one-level reduction in his offense level under § 3E1.1(b)(1). Specifically, Mr. Marquez argues that he disclosed everything he knew about his involvement shortly after his arrest: the amount he was paid to transport the drugs, the amount he was to receive upon successful delivery, and the fact that he was hired to drive the RV from California to Boston, Massachusetts. Aplt. Br. at 13. The district

[3] As noted above, instead of denying Mr. Marquez's request for a one-level reduction under § 3E1.1(b)(1), the district court stated in its sentencing order that it was denying Mr. Marquez's request "under the 'safety valve' provisions of USSG 5C1.2." I R. Doc. 36 at 1. In making this statement, we are satisfied that the district court intended to deny Mr. Marquez's claim that he was entitled to the third level reduction provided for in § 3E1.1(b)(1), but instead mistakenly cited § 5C1.2. This conclusion is supported by the fact that the district court's reference to § 5C1.2 was made in the context of responding to what the district court characterized as Mr. Marquez' claim "that he is entitled to an additional *one level reduction*." I R. Doc. 36 at 1 (emphasis added). Of course, it is § 3E1.1(b)(1) which entitles a defendant to "an additional one level reduction" based on the disclosure of information concerning the offense, not the "safety valve" provision of § 5C1.2, which operates to entitle a defendant to be sentenced below the applicable statutory minimum sentence and receive a *two-level* offense level reduction under U.S.S.G. § 2D1.1(b)(6).

court, however, found that he failed to provide information regarding where he obtained the marijuana, how long it had been in his possession, and the names of the individuals who were to receive it. Under such circumstances, we cannot say that the district court erred in holding that Mr. Marquez was not entitled to a reduction for providing complete information concerning his involvement in the offense.

We reach a different conclusion as to Mr. Marquez's request for a reduction under § 3E1.1(b)(2). In determining whether the district court properly denied Mr. Marquez's request for an additional reduction under this section, the determinative inquiry is whether Mr. Marquez's notification of his intent to plead guilty was timely. The application notes to § 3E1.1 explain that the timeliness question is "context specific," and that a defendant's notification must generally "occur particularly early in the case" in order to be sufficient. U.S.S.G. § 3E1.1, cmt. n.6. However, § 3E1.1 and the accompanying application notes also make it clear that timeliness should be determined by reference to functional rather than "strictly temporal" terms. United States v. Cunningham, 201 F.3d 20, 25 (1st Cir. 2000); see also United States v. Dethlefs, 123 F.3d 39, 43 (1st Cir. 1997) (noting that "[t]imeliness is a concept, not a constant, and it normally must be evaluated in context."). "[T]o qualify under subsection (b)(2), the defendant must have notified authorities of his intention to enter a plea of guilty at a sufficiently early

point in the process so that the government may avoid preparing for trial and the court may schedule its calendar efficiently." U.S.S.G. § 3E1.1, cmt. n.6.

In its sentencing order denying Mr. Marquez's objections to the PSR, the district court explained its decision as follows:

> The Court finds that this objection should be denied. While defendant claims that he fully accepted responsibility for his offense, it is clear that his plea was entered on the eve of trial, and only after a lengthy suppression hearing which required the attendance of all but one of the government's witnesses.

I R. Doc 36 at 1. Because we believe that under the circumstances of this case both reasons offered by the district court constitute impermissible grounds upon which to base a denial of the third level reduction under § 3E1.1(b)(2), we reverse.

First, we have little difficulty concluding that the district court erred in relying in part on the fact that Mr. Marquez entered a guilty plea only after a "lengthy suppression hearing" that just so happened to require the attendance of most of the government's witnesses. Although the question of how the filing of a motion to suppress should affect the inquiry under § 3E1.1(b)(2) has yet to be addressed in this circuit, we agree with those circuits holding that a district court may not penalize a defendant for bringing a non-frivolous motion to suppress by denying a reduction under subsection (b)(2). See, e.g., United States v. Kimple, 27 F.3d 1409, 1413 (9th Cir. 1994) ("The denial of a reduction under subsection

- 16 -

(b)(2) is impermissible if it penalizes a defendant who has exercised his constitutional rights."). A defendant, of course, is entitled to bring a motion to suppress to protect his or her constitutional rights, and we agree that "[t]he Guidelines do not force a defendant to forgo the filing of routine pre-trial motions as the price of receiving a one-step decrease [under § 3E1.1(b)(2)]." United States v. Marroquin, 136 F.3d 220, 225 (1st Cir. 1998).

The government takes the position that "if the government establishes that it prepared for trial in conjunction with responding to pretrial motions, denial of the reduction may be justified," even if "[the district court] cannot deny the reduction on the basis that the defendant exercised his constitutional rights at the pretrial stage of the proceedings." Aplee. Br. at 17 (citing Kimple, 27 F.3d at 1413-14). One obvious problem with this position is that it could conceivably deprive a defendant of a reduction under subsection (b)(2) even where the hearing, and subsequent notification of intent to plead guilty, occurred several months prior to the trial date, based on the government's claim that it "prepared for trial in conjunction with responding to pretrial motions." Id. Regardless, we note that the record in the instant case is completely devoid of any evidence that the government did anything to prepare for trial in addition to what was required to prepare for the motion to suppress. Moreover, when asked at oral argument whether there was any evidence in the record that the government had to prepare

for trial, counsel for the government responded that such a conclusion should be inferred from the mere fact that the suppression hearing occurred eight days before the trial was scheduled to begin.[4]  However, preparation for a motion to suppress is not the same as preparation for a trial.  Even where, as here, there is substantial overlap between the issues that will be raised at the suppression hearing and those that will be raised at trial, preparation for a motion to suppress would not require the preparation of voir dire questions, opening statements, closing arguments, and proposed jury instructions, to name just a few examples.  Consequently, we hold that where a defendant has filed a non-frivolous motion to suppress, and there is no evidence that the government engaged in preparation beyond that which was required for the motion, a district court may not rely on the fact that the defendant filed a motion to suppress requiring a "lengthy suppression hearing" to justify a denial of the third level reduction under § 3E1.1(b)(2).

We reach a similar conclusion regarding the district court's reliance on the fact that Mr. Marquez's plea "was entered on the eve of trial."  I R. Doc. 36 at 1. We begin by noting that the proper focus is on when Mr. Marquez *notified* the government of his intent to plead guilty, not on the date he actually entered his

---

[4]  Significantly, in its brief and at oral argument, the government never stated what, if anything, it did to prepare for trial beyond that which was required to prepare for the motion to suppress.

plea.  See U.S.S.G. § 3E1.1(b)(2); United States v. Munoz, 83 F.3d 7, 9 (1st Cir. 1996).  Mr. Marquez notified the government of his intent to plead guilty on May 6, 2002, eight days prior to the date on which his trial was scheduled to begin.  Aplee. Br. at 17.  Significantly, however, the suppression hearing was held on the same day.  Consequently, Mr. Marquez's seemingly belated notification of his intent to plead guilty actually occurred promptly after the district court orally denied his motion to suppress, which had been filed on April 17, 2002.  Moreover, counsel for the government conceded at oral argument that under the procedures in place in the court where the proceedings were held, suppression hearings were routinely scheduled to occur as late as eight days before trial, and that it was not Mr. Marquez's fault that his hearing was scheduled to occur at such a late date.

As noted above, the determination of whether a defendant's notification of his or her intent to plead guilty is "timely" cannot be made without regard to the context within which the notification was made.  Where a defendant has filed a motion to suppress, the defendant cannot make an informed decision regarding whether he or she should plead guilty until it is known how the district court will respond to the motion.  It is true that a defendant certainly has the ability to inform the government, in advance of a suppression hearing, of his or her intent to plead guilty in the event that the district court denies the motion.  However,

we do not believe such a conditional notification of intent should be required to preserve a defendant's eligibility for a reduction under § 3E1.1(b)(2). A defendant who gives such a notification may undercut his own defense, as well as his ability to negotiate for and ultimately obtain a plea agreement.

Given that the district court erred in relying on the factors discussed above, we next consider the proper remedy. We need not remand to the district court to determine Mr. Marquez's eligibility for the reduction given the explicit considerations that both the district court and this court have given to the relevant factors. After thoroughly reviewing the parties' briefs and the record on appeal, we are satisfied that under the facts of this case Mr. Marquez was entitled to the additional reduction under § 3E1.1(b)(2). Accordingly, we AFFIRM the district court's denial of Mr. Marquez's motion to suppress, REVERSE its denial of his request for an additional one-level reduction under U.S.S.G. § 3E1.1(b)(2), and remand with instructions to grant Mr. Marquez a one-level decrease in his offense level and resentence him accordingly.