**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

　　Plaintiff - Appellee,

v.

SHELIA VILLEGAS,

　　Defendant - Appellant.

No. 15-2063
(D.C. No. 1:14-CR-01761-JAP-1)
(D. N. Mex.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **HOLMES**, and **MATHESON**, Circuit Judges.
_____

Albuquerque Police Detective Kelly Sinclair stopped Shelia Villegas for driving over the solid white line separating the roadway from the shoulder of Interstate 40. After he checked and returned her license and registration, Detective Sinclair inquired whether he could ask her some questions. She said yes. She consented again when Detective Sinclair asked if he could search her vehicle. The search found methamphetamine and cocaine.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Ms. Villegas was charged with possession of controlled substances. She moved to suppress the evidence, challenging both the initial stop and the subsequent search. The district court denied the motion after determining (1) Detective Sinclair had reasonable suspicion that Ms. Villegas violated N.M. Stat. Ann. § 66-7-317 when she crossed the shoulder line, and (2) Ms. Villegas's consent to the search was voluntary.

Ms. Villegas was found guilty at trial. At sentencing, the Government refused to move for an offense level reduction for acceptance of responsibility under United States Sentencing Guidelines Manual ("U.S.S.G.") § 3E1.1(b), explaining such a reduction is typically reserved for defendants who plead guilty before trial. The district court denied Ms. Villegas's motion to grant the reduction.

On appeal, Ms. Villegas challenges the traffic stop, the search, and the denial of the reduction. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, we affirm.

## I. BACKGROUND

### A. *Factual History*

The following is based on evidence presented at the suppression hearing and recounted, as we are required to consider it, in the light most favorable to the Government. *United States v. Huff*, 782 F.3d 1221, 1225 (10th Cir. 2015).

1. **Traffic Stop**

On April 29, 2014, at 2:44 p.m., Detective Sinclair was sitting in his patrol vehicle parked in the median of Interstate 40. He noticed a group of cars pass him travelling east. He pulled into traffic to observe them and spotted a black Dodge Dakota with Arkansas

license plates in the right lane at the back of the group. As Detective Sinclair followed the group, he saw the Dakota cross the solid white line separating the roadway from the shoulder.

Detective Sinclair noticed the driver of the Dakota, Ms. Villegas, drift across the line as she was watching Detective Sinclair's vehicle in her rear view mirror. He did not notice any wind that would cause the Dakota to drift.

Detective Sinclair pulled the Dakota over to the side of the interstate and approached the passenger side of the vehicle. He asked Ms. Villegas for her license, proof of insurance, and registration, which she gave him. As Ms. Villegas was retrieving her paperwork, Detective Sinclair noticed a single key in the ignition, multiple air fresheners, and a "lived-in" appearance to the interior of the Dakota. ROA Vol. 1 at 69.

After reviewing Ms. Villegas's license and other paperwork, Detective Sinclair asked her to accompany him to his vehicle. She agreed. Ms. Villegas sat in the front passenger seat. Detective Sinclair sat in the driver's seat as he talked with Ms. Villegas and checked her paperwork on his computer. His police dog was in the back. According to Detective Sinclair, she did not appear threatened or concerned by the police dog. After the check was complete, Ms. Villegas received a warning citation for crossing the solid white line. Detective Sinclair returned the paperwork to her and asked her if she was "good to go." ROA Vol. 1 at 87.

2. **Questioning and Search**

As Ms. Villegas turned to the door and grabbed the handle, Detective Sinclair inquired whether he could ask more questions. She agreed. Detective Sinclair then asked

Ms. Villegas whether she was transporting drugs. She replied no. He next asked if he could search the Dakota. She consented. Another officer arrived to assist with the search.

Detective Sinclair used his police dog to search the Dakota. The dog indicated the presence of narcotics near the rear bumper, the driver's side door, and the center console. Ms. Villegas told Detective Sinclair that the dog's positive alert must have come from her use of cocaine earlier that day. She produced a baggie of cocaine from her front pocket. Detective Sinclair confiscated the baggie, proceeded to search the Dakota, and found methamphetamine and cocaine in the doors and bumper.

Ms. Villegas was arrested and charged with one count of possession with intent to distribute more than 500 grams of cocaine under 21 U.S.C. § 841(b)(1)(B) and one count of possession with intent to distribute more than 500 grams of methamphetamine under 21 U.S.C. § 841(b)(1)(A).

B. *Procedural History*

1. **Motion to Suppress**

On June 25, 2015, Ms. Villegas moved to suppress the evidence obtained from the search, arguing Detective Sinclair lacked reasonable suspicion to stop her for a traffic violation. At the suppression hearing, defense counsel argued that Ms. Villegas did not commit a traffic violation because N.M. Stat. Ann. § 66-7-317 requires not only (1) the departure of a vehicle from the traffic lane, but also (2) the presence of an unsafe condition, which was absent. Counsel also argued that any consent Ms. Villegas gave to Detective Sinclair to search her vehicle was not knowing or voluntary.

Detective Sinclair testified that he saw Ms. Villegas's vehicle cross the shoulder line. He said there is typically tire debris on the shoulder of Interstate 40, which is a safety hazard, and that he saw debris on the portion of the interstate where Ms. Villegas was driving. He could not say how close the Dakota came to any debris that he observed. He testified that "it appeared that [Ms. Villegas] was so intent and concentrated on watching me through her rearview mirror that to me it made it appear that that was the reason that she left her lane of travel." ROA Vol. 1 at 64. Ms. Villegas testified at the hearing that she never crossed the shoulder line.

The district court credited Detective Sinclair's testimony and denied the motion to suppress, determining (1) Detective Sinclair had reasonable suspicion to stop Ms. Villegas for violating N.M. Stat. Ann. § 66-7-317, and (2) Ms. Villegas voluntarily consented to the search of her vehicle.

2. **Trial and Sentencing**

After the court denied her motion to suppress, Ms. Villegas expressed interest in a conditional plea agreement, but the Government did not offer one. She also requested a bench trial, but the Government insisted on a jury trial.

Before trial, both parties filed motions in limine and engaged in other trial preparation. Ms. Villegas filed a motion to exclude testimony from the suppression hearing. The motion to exclude triggered further briefing because Ms. Villegas filed her reply to that motion late. The Government filed an unopposed motion in limine to exclude reference to punishment in front of the jury. The parties also filed witness lists, exhibit lists, proposed voir dire questions, and jury instructions.

At trial, defense counsel presented a minimal defense—no opening argument, no witnesses, and a brief closing argument. Ms. Villegas was convicted on both counts.

At sentencing, Ms. Villegas argued she should receive offense level reductions for acceptance of responsibility under U.S.S.G. §§ 3E1.1(a) and (b). The U.S. Probation Office's Presentence Investigation Report ("PSR") recommended the district court not apply any reduction for acceptance of responsibility because Ms. Villegas proceeded to trial. When the Government refused to move for a reduction under § 3E1.1(b), Ms. Villegas moved for one on her own behalf. After a hearing, the court granted a two-level reduction under § 3E1.1(a), but denied an additional one-level reduction under § 3E1.1(b).

## II. **DISCUSSION**

Ms. Villegas appeals the district court's denials of her motion to suppress and her motion for a reduction for acceptance of responsibility under § 3E1.1(b). She contends the district court erroneously concluded (1) that Detective Sinclair had reasonable suspicion to stop her based on N.M. Stat. Ann. § 66-7-317 and (2) that the subsequent search was consensual. She further asserts the district court erroneously refused the reduction even though the Government had expended minimal resources in preparing for trial. We affirm.

### A. *Motion to Suppress*

1. **Standard of Review**

In reviewing a district court's denial of a motion to suppress, we view the evidence in the light most favorable to the Government and accept the district court's

- 6 -

factual findings unless clearly erroneous. *See United States v. Hunter*, 663 F.3d 1136, 1141 (10th Cir. 2011); *United States v. Karam*, 496 F.3d 1157, 1161 (10th Cir. 2007).

We review de novo the ultimate determination of the reasonableness of a search or seizure under the Fourth Amendment. *Karam*, 496 F.3d at 1161.

2. **Traffic Stop**

Ms. Villegas contends the district court erred in concluding Detective Sinclair had reasonable suspicion that she violated N.M. Stat. Ann. § 66-7-317. She argues the statute requires the presence of a safety concern and that the district court clearly erred in determining a safety concern was present. We affirm because, even if § 66-7-317 requires a safety concern to be present, the district court did not clearly err in finding one when Detective Sinclair stopped Ms. Villegas.

a. *Legal Background*

Under the Fourth Amendment, a traffic stop, to be justified at its inception, must be "'based on an observed traffic violation'" or a police officer's "'reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring.'" *United States v. Eckhart*, 569 F.3d 1263, 1271 (10th Cir. 2009) (quoting *United States v. Botero–Ospina*, 71 F.3d 783, 787 (10th Cir. 1995) (en banc)). "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than [a] preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).

Detective Sinclair cited Ms. Villegas for violating § 66-7-317, which states the following:

> Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others consistent herewith shall apply:
>
> a. a vehicle shall be driven as nearly as possible entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety[.]

b. *Analysis*

Ms. Villegas interprets§ 66-7-317 to require (1) a vehicle to depart its traffic lane and (2) the presence of a safety concern. The Government argues only the first element is required. A reasonable officer in Detective Sinclair's position would have had reasonable suspicion even under Ms. Villegas's view.

The district court found that the tire debris on the road posed a safety risk when Ms. Villegas crossed the shoulder line. Ms. Villegas argues this finding is clearly erroneous because Detective Sinclair was unable to specify the proximity of any debris to her vehicle. But when asked if there was debris where Ms. Villegas crossed the shoulder line, Detective Sinclair testified he saw debris "[o]n this particular day, at this particular point on the highway . . . on the shoulder" and that there was therefore "a very high probability that if you drove on the shoulder long enough . . . you would get a flat or a blowout." ROA Vol. 1 at 65.

His testimony shows the district court did not clearly err in determining that "Detective Sinclair's testimony established that Defendant's movement of her vehicle

into the shoulder of the highway implicated safety concerns due to debris he observed in the shoulder on that day." ROA Vol. 1 at 52. Detective Sinclair therefore had reasonable suspicion to stop her under § 66-7-317.[1]

3. **Questioning and Search**

We affirm the district court's determination that the search was lawful because (1) reasonable suspicion supported the traffic stop, which therefore did not taint the search; (2) the stop became a consensual encounter; and (3) Ms. Villegas consented voluntarily to the subsequent search.

i. The Traffic Stop Did Not Taint the Search

As Ms. Villegas concedes, her argument that the traffic stop tainted the subsequent search is "premised upon a ruling that the traffic stop was an illegal stop." Aplt. Br. at 13. Because the underlying traffic stop was based on reasonable suspicion, it did not taint the subsequent search.

ii. The Traffic Stop Became a Consensual Encounter

Ms. Villegas challenges the district court's determination that the traffic stop became a consensual encounter. A traffic stop generally "must last no longer than is necessary to effectuate the purpose of the stop." *United States v. Pena–Montes*, 589 F.3d 1048, 1052 (10th Cir. 2009) (quotations omitted); *see also Illinois v. Caballes*, 543 U.S.

---

[1] We do not reach Ms. Villegas's argument that Detective Sinclair committed an unreasonable mistake of law in citing her for violating § 66-7-317 because we determine above that Detective Sinclair had reasonable suspicion even under Ms. Villegas's view of § 66-7-317.

405, 407 (2005). A law enforcement officer conducting a routine traffic stop "may generally request a driver's license, registration, and other required papers, run requisite computer checks, and issue citations or warnings as appropriate." *United States v. Rosborough*, 366 F.3d 1145, 1148 (10th Cir. 2004); *see also United States v. Cervine*, 347 F.3d 865, 871 (10th Cir. 2003) (stating an officer may also inquire about travel plans). But an officer may not prolong the detention unless (1) he or she "develops an objectively reasonable and articulable suspicion that the driver is engaged in some illegal activity, or (2) the initial detention . . . becomes a consensual encounter." *Rosborough*, 366 F.3d at 1148 (quotations and alterations omitted).

"A detention for a traffic citation can turn into a consensual encounter after the trooper has returned the driver his documentation so long as 'a reasonable person under the circumstances would believe he was free to leave or disregard the officer's request for information.'" *United States v. Wallace*, 429 F.3d 969, 974-75 (10th Cir. 2005) (quoting *United States v. Elliott*, 107 F.3d 810, 814 (10th Cir. 1997)).

After Detective Sinclair returned Ms. Villegas's paperwork, he asked if she was "good to go," and she reached for the door. Only after she reached for the door did Detective Sinclair ask if he could ask her some more questions. The district court concluded her reaching for the door showed she understood his returning of the paperwork and question to be the end of the traffic stop detention. *See Wallace*, 429 F.3d at 975 (encounter after initial traffic stop became consensual when officer returned paperwork and stated, "'That's all I've got.'"). We agree. The traffic stop became a consensual encounter because "a reasonable person" in Ms. Villegas's position "would

- 10 -

believe [s]he was free to leave or disregard the officer's request for information." *Id.* at 974-75 (quoting *Elliott*, 107 F.3d at 814).

Ms. Villegas contends that Detective Sinclair lacked reasonable suspicion to extend the traffic stop. *See Rodriguez v. United States*, 135 S. Ct. 1609, 1616-17 (2015) (holding a delay of several minutes for a police dog to arrive after a driver refused consent for a search was a seizure that was not constitutionally justified). We decline to reach this argument because Ms. Villegas's consent alone allowed Detective Sinclair to search the vehicle. *See United States v. Gregoire*, 425 F.3d 872, 879 (10th Cir. 2005) (holding that after an initial traffic stop is completed, "a driver must be allowed to proceed on his way unless reasonable suspicion exists that the driver is engaged in criminal activity or the driver consents to additional questioning").

### iii. Ms. Villegas Consented Voluntarily to Further Questioning and the Subsequent Search

Ms. Villegas challenges the district court's determination that she voluntarily consented to Detective Sinclair's questioning and subsequent search. "The question whether a consent to a search was in fact voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *United States v. Harrison*, 639 F.3d 1273, 1278 (10th Cir. 2011) (quotations and alteration omitted). Because it is a question of fact, we review for clear error. *Id.* at 1277.

Ms. Villegas's presence with Detective Sinclair in the police vehicle did not make her consent involuntary. *See United States v. Taverna*, 348 F.3d 873, 879 (10th Cir.

- 11 -

2003) (holding that consent to questioning before driver entered police vehicle and subsequent consent to search while driver was in police vehicle were both voluntary); *United States v. Melendez-Garcia*, 28 F.3d 1046, 1055 n.6 (10th Cir. 1994) (upholding a district court's determination that consent obtained from driver who had been arrested and placed in the back of a police vehicle was voluntary); *United States v. Contreras*, 506 F.3d 1031, 1037 (10th Cir. 2007) ("[D]etention is only one factor to be considered in determining whether consent was voluntarily and freely given based on the totality of the circumstances.").

Apart from being in the police vehicle, Ms. Villegas identifies no portion of the record suggesting she was coerced into giving consent for Detective Sinclair to ask questions or search her vehicle. Under the totality of the circumstances, the district court did not clearly err in finding Ms. Villegas's consent was voluntary.[2]

\* \* \* \*

Detective Sinclair's search of Ms. Villegas's vehicle was lawful because (1) the underlying traffic stop was lawful, (2) the traffic stop became a consensual encounter, and (3) she voluntarily gave her consent to the questioning and to the search of the vehicle.

---

[2] Ms. Villegas does not argue that Detective Sinclair exceeded the scope of the consent she gave, and the record supports that Ms. Villegas never revoked or limited her consent.

## B.   *U.S.S.G. § 3E1.1(b) Acceptance of Responsibility Reduction*

Ms. Villegas contends the district court erred by denying her a reduction for acceptance of responsibility under § 3E1.1(b).  We affirm because she proceeded to trial and caused the Government to expend resources in preparation.

### 1.  **Standard of Review and Legal Background**

We review the district court's decision to accept or reject the Government's refusal to file a § 3E1.1(b) motion for clear error.  *United States v. Salas*, 756 F.3d 1196, 1204 (10th Cir. 2014).

If a defendant's offense level is 16 or greater, § 3E1.1(b) authorizes an additional one-level decrease for acceptance of responsibility "upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently."  Section 3E1.1(b) confers on the government "a power, not a duty, to file a motion when a defendant has timely notified prosecutors of an intention to plead guilty."  *United States v. Moreno–Trevino*, 432 F.3d 1181, 1186 (10th Cir. 2005) (quotations and citation omitted).  Thus, even if a defendant timely notifies the government of his intent to plead guilty, "such timeliness does not automatically entitle him to the government's filing for the additional adjustment."  *Id.* at 1186.

Although the Government's discretion to file a § 3E1.1 motion is broad, it is not unfettered.  *United States v. Evans*, 744 F.3d 1192, 1199 (10th Cir. 2014).  A district

- 13 -

court may review the government's decision not to file a § 3E1.1 motion and grant a remedy if it finds the refusal was "(1) animated by an unconstitutional motive, or (2) not rationally related to a legitimate government end." *Id.* (quotations omitted); *United States v. Blanco*, 466 F.3d 916, 918 (10th Cir. 2006).

2. **Analysis**

Ms. Villegas contends the district court erred by declining to grant a § 3E1.1(b) reduction. She states she helped the Government investigate others involved in drug trafficking. She argues the Government's trial preparation was largely for the suppression hearing, and the Government's decision not to move for acceptance of responsibility was not rationally related to a legitimate government interest. She cites cases in which courts have held that the Government should not take into account its preparation for a motion to suppress hearing when determining whether to offer the § 3E1.1(b) reduction for acceptance of responsibility. *See United States v. Marquez*, 337 F.3d 1203, 1212 (10th Cir. 2003); *United States v. Villaba*, 86 F. Supp. 3d 1252, 1273 (D.N.M. 2015).

The district court did not clearly err in declining to grant the § 3E1.1(b) reduction. The cases Ms. Villegas cites all involve defendants who, unlike Ms. Villegas, pled guilty after their motions to suppress were denied. *See Marquez*, 337 F.3d at 1212; *Villaba*, 86 F. Supp. 3d at 1273. Although Ms. Villegas may have cooperated and presented little to no defense at trial by not pleading guilty, she forced the Government to present its case at trial. To the extent the Government is obligated to show more than Ms. Villegas's proceeding to trial, it has done so. As spelled out in more detail above, the Government

filed several motions and responded to defend motions in preparation for, and during, trial.

Thus, it was not error for the district court to accept the Government's refusal to offer a reduction for acceptance of responsibility, which is premised on "permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently." U.S.S.G § 3E1.1(b).

## III. **CONCLUSION**

The district court did not err in determining that Detective Sinclair constitutionally stopped Ms. Villegas based on a reasonable suspicion of a N.M. Stat. Ann. § 66-7-317 violation, and that she gave voluntary consent for Detective Sinclair to ask her further questions and to search her vehicle. Finally, the district court did not clearly err in accepting the Government's refusal to offer Ms. Villegas an offense level reduction for acceptance of responsibility under U.S.S.G. 3E1.1(b). We affirm.

ENTERED FOR THE COURT,

Scott M. Matheson, Jr.
Circuit Judge