FILED
United States Court of Appeals
Tenth Circuit

February 13, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

KEITH and KIM EIDSON,

        Plaintiffs-Appellees,

v.

        No. 07-7007

FLOYD WESLEY OWENS,
individually,

        Defendant-Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA
(D.C. No. 06-CV-62-RAW)**

Submitted on the briefs:[*]

Chris J. Collins, Stephen L. Geries, Collins, Zorn, & Wagner, P.C.,
Oklahoma City, Oklahoma, for Defendant-Appellant.

Richard O'Carroll, O'Carroll & O'Carroll, Tulsa, Oklahoma, for
Plaintiffs-Appellees.

Before **KELLY**, **McKAY**, and **ANDERSON**, Circuit Judges.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument.

**KELLY**, Circuit Judge.

_____

In this 42 U.S.C. § 1983 action, Floyd Wesley Owens, a reserve-force deputy sheriff and lawyer, appeals the district court's denial of qualified immunity in connection with the search of Keith and Kim Eidsons' real property. We conclude that while Owens obtained the Eidsons' consent to search their property in violation of the Fourth Amendment, the illegality was not clearly established. We also conclude that Owens did not extract a confession from Kim Eidson in violation of the Fifth Amendment. Owens is, therefore, entitled to qualified immunity. Accordingly, we reverse and remand with instructions for the district court to enter summary judgment in Owens' favor on the Eidsons' constitutional claims. We also conclude that this court lacks jurisdiction to review the district court's denial of summary judgment on the Eidsons' legal malpractice claim. Therefore, we dismiss this appeal insofar as it involves that claim.

## BACKGROUND

At the times relevant to this appeal, Owens was a practicing attorney and a reserve-force deputy sheriff in Wagoner County, Oklahoma. In April 2002, Owens drafted the Eidsons' will. Twenty-eight months later, on August 21, 2004, Owens participated in a search of the Eidsons' farm. The following is the

Eidsons' account of the day's events leading up to the search and of the search itself.

Kim Eidson saw Owens' wife at an auction and told her about an altercation she (Kim) had just had with the mother of her son's girlfriend. Owens' wife relayed the information to Owens, who put on his uniform and went to the Eidsons' farm in a marked vehicle to check on Kim. There, Owens met Kim at a closed gate to the driveway, about 200 yards away from the house, and asked if she was "okay." Aplt. App. at 237-38.

Four other deputies soon arrived. One of those deputies, Mark Krenek, took Owens aside and told him that he had received information that the Eidsons were growing marijuana on their farm. Kim overheard Owens being told that her "17-year-old son [Jordan] had [informed] the authorities that . . . marijuana [was] growing on [the] property." *Id.* at 357. In fact, Krenek had received that information from the mother and grandmother of Jordan's girlfriend. Krenek directed Owens to seek Kim's consent for a search of the farm. Owens returned to Kim and said, "[D]on't lie to me, Kim. Jordan has turned you in." *Id.* at 359. Kim confessed that she "ha[d] some plants back there." *Id.* At some point, Keith Eidson arrived on the scene and was told that Jordan "had turned [them] in." *Id.* at 372. He asked Owens "what would happen if they did not consent." *Id.* at 238. Owens responded, "If it takes three days, . . . we'll hold you here for three days" while the other deputies obtain a warrant. *Id.* at 337. Owens also stated,

"[I]f [you make] them get a warrant . . . the judge would go harder on [you] in court and [you] would be considered uncooperative." *Id.* at 371; *see also id.* at 336. Keith and Kim each signed a consent form.

The Eidsons led the deputies down the driveway to their house and a search began. Deputies discovered marijuana plants growing in the Eidsons' flower garden, bags of marijuana inside the Eidsons' house, and drug paraphernalia located throughout the house and the Eidsons' vehicles. Deputy Krenek *Mirandized*[1] Kim on the back porch of the Eidsons' residence, and she responded, "[I]f you have any questions, ask [Owens], he's my lawyer." *Id.* at 338. Afterward, Owens transported the Eidsons to the jail and told them that he could not be their lawyer.

The Eidsons were charged in state court with unlawfully cultivating marijuana, possessing marijuana with intent to distribute, and possessing drug paraphernalia. Ultimately, the evidence against the Eidsons was suppressed and the criminal case dismissed.

In 2006, the Eidsons filed in federal district court a 42 U.S.C. § 1983 suit against Owens and Wagoner County. The Eidsons alleged violations of the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and they advanced state-law claims of legal malpractice, infliction of emotional distress, and false arrest. The only claims that survived summary

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

judgment were their Fourth and Fifth Amendment claims against Owens and their malpractice claim against Owens. In withholding summary judgment on the constitutional claims, the district court stated that it could not decide whether Owens had qualified immunity because there was a factual dispute as to when Owens told the Eidsons he was not their lawyer. Specifically, Owens maintained that during the search of the Eidsons' property he repeatedly told them he was not their lawyer, whereas the Eidsons maintained that Owens did not disavow his lawyer status until they were being driven to the jail. The district court denied summary judgment on the malpractice claim for the same reason—that disputed factual issues remained as to when Owens said he was not the Eidsons' lawyer.

Owens appeals. The Eidsons have not filed an appellees' brief, but they have filed a brief on the issue of appellate jurisdiction, arguing that this appeal cannot proceed because there are disputed factual issues.

## DISCUSSION

### I. Jurisdiction

We first address our jurisdiction to consider this appeal. An order denying summary judgment is ordinarily not appealable. *See Powell v. Mikulecky*, 891 F.2d 1454, 1456 (10th Cir. 1989). But under the collateral order doctrine, "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell v.*

-5-

*Forsyth*, 472 U.S. 511, 530 (1985). This jurisdiction is limited, though, to appeals challenging "not which facts the parties might be able to prove, but, rather, whether or not certain given facts showed a violation of clearly established law." *Johnson v. Jones*, 515 U.S. 304, 311 (1995) (quotation omitted).

While the district court found that it could not render a qualified-immunity ruling because of a factual dispute, that finding is not jurisdictionally dispositive on appeal given that Owens argues that immunity applies even under the Eidsons' version of the facts. *See Farmer v. Perrill*, 288 F.3d 1254, 1258 n.4 (10th Cir. 2002) (noting that appellate jurisdiction exists if the defendant does not dispute the plaintiff's facts or if the defendant is "willing to concede the most favorable view of the facts to the plaintiff for purposes of the appeal") (quotation omitted). Consequently, we have jurisdiction to consider whether Owens has qualified immunity from the Eidsons' Fourth and Fifth Amendment claims.

Qualified immunity does not, however, apply to the Eidsons' malpractice claim. *See Jenkins v. City of New York*, 478 F.3d 76, 86 (2d Cir. 2007) (stating that qualified immunity "protects an official from liability under *federal* causes of action but is not generally understood to protect officials from claims based on state law"). Owens requests that this claim be considered on appeal under the doctrine of pendent appellate jurisdiction. This doctrine is generally disfavored, applying only when "the otherwise nonappealable decision is inextricably intertwined with the appealable decision" or when "review of the nonappealable

decision is necessary to ensure meaningful review of the appealable one." *Kirkland v. St. Vrain Valley Sch. Dist.*, 464 F.3d 1182, 1198 (10th Cir. 2006) (quotation omitted).  We conclude that neither situation applies here.  Whether Owens breached "a duty to the Eidsons of loyalty and confidentiality," thereby committing malpractice, Aplt. App. at 22 (amended complaint), is independent of the constitutional claims and is an issue better suited for resolution in the district court.  Accordingly, we dismiss this appeal insofar as it challenges the district court's denial of summary judgment in regard to the Eidsons' malpractice claim.

## II.  Qualified Immunity

"The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Boles v. Neet*, 486 F.3d 1177, 1180 (10th Cir. 2007) (quotation omitted).  We review de novo a district court's decision to deny a summary-judgment motion that asserts qualified immunity.  *Id.* Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

Our review is sequential.  First, "we must consider whether the plaintiff's factual allegations show that the official's conduct violated a constitutional right.

-7-

If the assumed facts do not establish a constitutional violation, the defendant is entitled to summary judgment," and we proceed no further. *Boles*, 486 F.3d at 1180 (citation omitted). But if a violation can be shown, we must then consider whether the right was clearly established. *Id.*

## A. Fourth Amendment

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend IV. "A warrantless search of a suspect's premises is unreasonable per se under the Fourth Amendment unless the government shows that the search falls within one of a carefully defined set of exceptions, such as a valid consent." *United States v. Glover*, 104 F.3d 1570, 1583 (10th Cir. 1997).

The Eidsons argued below that their consent to search was invalidated by Owens' statements and his "contradictory roles" as a lawyer and a reserve-force deputy sheriff. Aplt. App. at 250. The validity of a consent-based search is based upon the totality of the circumstances as to "whether the consent was the product of an essentially free and unconstrained choice by the maker or whether it was the product of duress or coercion, express or implied." *United States v. Sawyer*, 441 F.3d 890, 895 (10th Cir.) (quotation and brackets omitted), *cert. denied*, 127 S. Ct. 156 (2006). Relevant circumstances "include physical mistreatment, use of violence, threats, promises, inducements, deception, trickery, or an

-8-

aggressive tone, the physical and mental condition and capacity of the defendant, the number of officers on the scene, and the display of police weapons." *Id*.

We first address Owens' statement that if the Eidsons did not consent to a search, the other deputies would obtain a warrant. An officer's threat to obtain a warrant may invalidate the suspect's eventual consent if the officers lack the probable cause necessary for a search warrant. *See United States v. Cruz-Mendez*, 467 F.3d 1260, 1268 (10th Cir. 2006), *cert. denied*, 127 S. Ct. 1027 (2007). Probable cause for a search warrant requires "facts that would lead a prudent person to believe there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Basham*, 268 F.3d 1199, 1203 (10th Cir. 2001). Here, Deputy Krenek had acquired information that the Eidsons were growing marijuana from the mother and grandmother of the girl dating the Eidsons' son. While the record is unclear as to what the mother and grandmother actually knew or how and when they acquired their information, Kim Eidson confessed to Owens that she had "some plants back there."[2] There was thus probable cause to support a search warrant.

Nevertheless, we do believe that a coercive element was present in Owens' threat of detaining the Eidsons while a warrant was obtained. A suspect's consent to search may be tainted by a threat of detention that essentially amounts to an

---

[2] As explained below in Part II.B., Kim Eidson's confession was not unconstitutionally obtained.

arrest if consent is refused.  *United States v. Ocheltree*, 622 F.2d 992, 994 (9th Cir. 1980); *cf. United States v. Maez*, 872 F.2d 1444, 1456 (10th Cir. 1989) (citing *Ocheltree* and concluding that an officer's statement to a suspect, that if she did not consent to a search she would have to wait while officers obtained a warrant, "undermine[d]" the officer's advice that she could refuse consent). Owens' threat to hold the Eidsons—apparently at the end of their driveway—for as long as three days while a warrant was obtained suggests a detention amounting to arrest.  *See Florida v. Royer*, 460 U.S. 491, 502 (1983) ("A show of official authority such that a reasonable person would have believed he was not free to leave" indicates that an arrest has occurred.) (plurality opinion) (quotation omitted).  The prospect of a three-day detention could certainly play a role in any suspect's consent decision.  But to the extent Owens' threat was directed at Kim Eidson, we deem the coercion minimal, given that probable cause for her arrest could be derived from her confession and the information relayed to Deputy Krenek.  *See United States v. Fernandez*, 772 F.2d 495, 498 n.2 (9th Cir. 1985) (suggesting that a detention threat does not impact consent if there is probable cause to arrest the subject); *see also Baptiste v. J.C. Penny Co.*, 147 F.3d 1252, 1256 (10th Cir. 1998) (observing that a warrantless arrest is permissible "if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to

believe that the arrestee has committed or is committing an offense") (quotation omitted and italics omitted).

Owens also stated that the Eidsons' son had "turned [them] in," Aplt. App. at 359, when in fact, the mother and grandmother of their son's girlfriend had contacted law enforcement. Owens' statement may have led the Eidsons to think that resistance to a search would have been futile, as their unlawful conduct had been exposed by someone with direct knowledge of it. *See United States v. Escobar*, 389 F.3d 781, 786 (8th Cir. 2004) (holding that defendants' consent to a search of their luggage was undermined by officer's misrepresentation that a drug dog had alerted to their luggage). But it appears that Owens was merely stating information he had received. Indeed, Kim Eidson testified during the preliminary hearing that she overheard other deputies inform Owens that her "son had told the authorities that [she and Keith] had marijuana growing on [the] property." Aplt. App. at 357. Consequently, while Owens' statement was incorrect, it was not made in an attempt to trick or deceive the Eidsons, and therefore, the statement was not improperly coercive.

Owens also told the Eidsons that if they insisted on a search warrant, "the judge would go harder on [you] in court and [you] would be considered uncooperative." *Id.* at 371. Such an assertion is coercive, as it indicates that there are punitive ramifications to the exercise of the constitutional right to refuse

-11-

consent.  *See United States v. Sebetich*, 776 F.2d 412, 425 n.21 (3d Cir. 1985) (suggesting the coercive nature of an officer's statement to a suspect's mother that "'it will go easier on your son' if [you] consent[ ] to the search"); *United States v. Haynes*, 301 F.3d 669, 687 (6th Cir. 2002) (Boggs, J., concurring in part and dissenting in part) (suggesting the coercive, or at least persuasive, nature of the statement, "'It'll go easier on you if you consent'").  Further, Owens' assertion likely carried extra weight because he had served as the Eidsons' attorney in the past.

On the other hand, the Eidsons each signed a consent form that said they were aware of the "lawful right to refuse to consent to [a warrantless] search" and were consenting "voluntarily and without any threats or promises of any kind." Aplt. App. at 149; *see also id.* at 127.  A signed consent form is indicative of a voluntary consent.  *See, e.g.*, *Glover*, 104 F.3d at 1584.  Also, there are no allegations that the deputies acted aggressively, unholstered their sidearms, or physically mistreated the Eidsons, or that either of the Eidsons were in a weakened physical or mental state.

Nevertheless, we conclude that the Eidsons' consents were invalid.[3] A consent to search is hardly the product of a free and unconstrained choice when procured by an officer who had in the not-too-distant past provided legal advice and who currently advises that withholding consent will result in detention and a judicial penalty. Even if we minimize the significance of the detention threat as it applies to Kim Eidson because probable cause existed for her arrest, we believe that the remaining circumstances are sufficient to invalidate her consent.

As the Eidsons' consents were obtained in violation of the Fourth Amendment's prohibition against unreasonable searches, our next step is to determine whether, in light of the specific context of this case, the constitutional prohibition was clearly established. *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007). The pertinent question "is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation." *Id.* (quotation omitted). This means that "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Id.* at 1114-15

---

[3] Owens does not argue that a warrantless search was appropriate, notwithstanding the invalidity of the Eidsons' consents, to prevent the imminent destruction of evidence. *See United States v. Carter*, 360 F.3d 1235, 1241 (10th Cir. 2004) (stating that a warrantless entry is permitted when there is (1) clear evidence of probable cause, (2) a serious crime where the destruction of evidence is likely, (3) an intrusion that is as minimal as necessary, and (4) "clearly defined indicators of exigency that are not subject to police manipulation or abuse").

(quotation omitted). "While the facts of the cases compared need not be identical, they must be sufficiently analogous to satisfy the particularized context necessary to support liability." *Mecham v. Frazier*, 500 F.3d 1200, 1206 (10th Cir. 2007) (citation omitted).

The Fourth Amendment violation that occurred here resulted from a variety of circumstances that have not, as far as our research reveals, occurred in another case. The coercive aspect of a deputy sheriff who also served as the suspect's attorney is a circumstance unique in itself. So too is the interplay of signed consent forms, no police aggression or mistreatment, and no suspect vulnerabilities with threats of detention and a judicial penalty. Given the dearth of caselaw on facts similar to these, we hold that it would not have been clear to a reasonable officer that he or she was violating the Eidsons' Fourth Amendment rights in obtaining their consents to a search. Accordingly, Owens is entitled to qualified immunity on the Eidsons' Fourth Amendment claim.

## B. Fifth Amendment

Among other things, the Fifth Amendment guarantees that "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend V. Although the Fifth Amendment does not mention a right to counsel, the right is implicit within the guarantee against compelled self-incrimination and may be invoked during a custodial interrogation. *See Miranda v. Arizona*, 384 U.S. 436, 469 (1966). The Eidsons' Fifth

Amendment claim is that Owens' "role as a lawyer/cop" violated their right to counsel and Kim's right to not incriminate herself. Aplt. App. at 249. A more thorough explanation of their claim cannot be gleaned from the record before us.

The Eidsons appear to base their claim on the fact that Oklahoma law prohibits deputy sheriffs from practicing law. *See* 5 Okla. Stat. Ann. § 1. But a violation of state law alone does not support a § 1983 claim. *See Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 119 (1992).

Further, neither right would have been available to the Eidsons because there was no custodial interrogation. *See United States v. Johnson*, 42 F.3d 1312, 1317, 1318 (10th Cir. 1994). Owens was initially present at the Eidsons' farm to check on Kim Eidson after her altercation with another woman. When Owens was told by other deputies that the Eidsons' son had turned them in for growing marijuana, Owens relayed that (mistaken) fact to Kim, who then confessed. She was not in custody at that point. *See United States v. Bennett*, 329 F.3d 769, 774 (10th Cir. 2003) (noting that a suspect is not in custody until her "freedom of action is curtailed to a degree associated with formal arrest") (quotation omitted). Even if Kim's contact with the deputies ripened into custody during the search, nothing indicates that Owens interrogated her after the search began. *See Rhode Island v. Innis*, 446 U.S. 291, 301 (1980) (holding that an interrogation occurs when there is "express questioning" or "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police

-15-

should know are reasonably likely to elicit an incriminating response from the suspect") (footnote omitted). The same is true for Keith Eidson.

Additionally, Kim Eidson's right against compelled self-incrimination arguably has no application here because it is a trial right, *see Chavez v. Martinez*, 538 U.S. 760, 767 (2003), and her criminal case never went to trial. In *Chavez*, the Supreme Court held that a § 1983 claim alleging compelled self-incrimination failed where the plaintiff "was never charged with a crime, and his answers were never used against him in any criminal prosecution." *Id.* at 764. But the Court declined to decide whether use of compelled statements at some point before trial but after the initiation of criminal proceedings was actionable. *Id.* at 766-67. Here, the criminal case against Kim Eidson apparently proceeded beyond the initiation of criminal proceedings and through the preliminary hearing phase, a point that the Seventh Circuit has found sufficient to implicate the right against self-incrimination. *See Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1026-27 (7th Cir. 2006) (applying *Chavez*). We need not express our agreement or disagreement with the Seventh Circuit, however, as Kim Eidson never incriminated herself during a custodial interrogation.

Finally, to the extent the Eidsons' claim is in reality that Kim's will was so overborne by Owens' "role as a lawyer/cop" that she confessed—a claim that would arise under the Fourteenth Amendment's due process clause, *see United States v. Nelson*, 450 F.3d 1201, 1210 (10th Cir.), *cert. denied*, 127 S. Ct. 326

-16-

(2006)—we see no constitutional infraction.[4]  Whether a confession is voluntary

depends on the totality of the circumstances, including "(1) the age, intelligence,

and education of the defendant; (2) the length of detention; (3) the length and

nature of the questioning; (4) whether the defendant was advised of his

constitutional rights; and (5) whether the defendant was subject to physical

punishment."  *United States v. Lopez*, 437 F.3d 1059, 1063-64 (10th Cir. 2006)

(quotation omitted).  Whatever influence Owens' former legal role had on Kim's

decision to confess that there were "some plants back there," we conclude that

that influence was overshadowed by Kim's mistaken belief that her son had

turned her in.  And significantly, Kim would have formed that belief about her

son before Owens approached her with that information, as she overheard other

deputies telling Owens that her son revealed that "marijuana [was] growing on

[the] property."  Aplt. App. at 357.  None of the other circumstances surrounding

her confession, including Owens' admonishment, "[D]on't lie to me," *id.* at 359,

indicates that her confession was involuntary.  *See Amaya-Ruiz v. Stewart*,

121 F.3d 486, 494 (9th Cir. 1997) (holding that officer's encouragement "to tell

the truth . . . did not amount to coercion"); *cf. Beecher v. Alabama*, 389 U.S. 35,

36, 38 (1967) (indicating that suspect's confession was involuntary where officer

---

[4]      While the district court granted Owens summary judgment on the Eidsons'
Fourteenth Amendment claim, it did not include within the summary judgment the
Eidsons' argument about Owens using his "role as lawyer/cop" to obtain a
confession.

fired rifle next to suspect's ear and another officer said, "If you don't tell the truth I am going to kill you").

Accordingly, Owens is entitled to qualified immunity on the Eidsons' Fifth (and any Fourteenth) Amendment claims.

CONCLUSION

We REVERSE the district court's order denying qualified immunity and we REMAND with instructions to enter summary judgment in Owens' favor on the Eidsons' remaining § 1983 claims. We DISMISS this appeal insofar as it challenges the district court's denial of summary judgment on the Eidsons' legal malpractice claim.