FILED
United States Court of Appeals
Tenth Circuit

May 11, 2011

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

# UNITED STATES COURT OF APPEALS

# TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

JOHNNY JAMES HARRISON,

Defendant-Appellee.

No. 10-5061

**Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 4:10-CR-00040-GKF-1)**

Richard A. Friedman, Attorney, Appellate Section, Criminal Division, United States Department of Justice, Washington D.C. (Lanny A. Breuer, Assistant Attorney General, and Gregory D. Andres, Acting Deputy Assistant Attorney General, Criminal Division, United States Department of Justice, Washington, D.C.; and Thomas Scott Woodward, United States Attorney, and Janet S. Reincke, Assistant United States Attorney, Northern District of Oklahoma, Tulsa, Oklahoma, with him on the briefs) for Plaintiff-Appellant.

Neil D. Van Dalsem (Robert Scott Williams with him on the brief) of Taylor, Ryan, Schmidt & Van Dalsem, P.C., Tulsa, Oklahoma, for Defendant-Appellee.

Before **O'BRIEN**, **SEYMOUR** and **HOLMES**, Circuit Judges.

**SEYMOUR**, Circuit Judge.

Mr. Harrison was charged by indictment with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). The firearm at issue was discovered by agents of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") during a warrantless search of Mr. Harrison's apartment. Mr. Harrison moved to suppress evidence of the loaded firearm, arguing he had not voluntarily consented to the search. The district court held a suppression hearing and agreed with Mr. Harrison that deceitful tactics used by the ATF to gain consent to search rendered Mr. Harrison's consent involuntary. The court granted the motion to suppress. The United States appeals, and we affirm.

## I.

According to testimony given during the suppression hearing, ATF Agent Stephen Brenneman began investigating Mr. Harrison after receiving information that he owed a thousand dollars to a suspected firearms trafficker and was selling drugs out of his apartment. Agent Brenneman conducted surveillance of Mr. Harrison's apartment over several months, but did not observe evidence of drug trafficking. Because the ATF lacked probable cause to request a warrant to search the apartment, Agent Brenneman and ATF Agent Darrell Withem decided to conduct a "knock and talk"[1] with Mr. Harrison in an attempt to gain consent to

---

[1] "As commonly understood, a 'knock and talk' is a consensual encounter
(continued...)

search the apartment.

On the day of the search, the Agents were dressed in plain clothes with their badges around their necks. Although they were armed, their firearms were not visible. The Agents went to Mr. Harrison's apartment and knocked on the door. Without opening the door, Mr. Harrison responded from inside the apartment, "Who is it?" Aplt. App. at 17. Agent Brenneman replied, "It's Steve." *Id.* Mr. Harrison said something to the effect of, "Hold on a minute." *Id.* Two or three minutes passed before Mr. Harrison opened the door. During this time, Agent Brenneman periodically continued to knock. When Mr. Harrison opened the door, the Agents identified themselves as law enforcement officers and asked if they could come inside to talk. Mr. Harrison agreed to talk and introduced himself.

Agent Brenneman told Mr. Harrison they were there because, "our office received an anonymous phone call there were drugs and bombs at this apartment,"[2] and he asked if Mr. Harrison "would mind if we look around the apartment." *Id.* at 19. The government concedes the ATF had no reason to

---

[1](...continued)
and therefore does not contravene the Fourth Amendment, even absent reasonable suspicion." *United States v. Cruz-Mendez*, 467 F.3d 1260, 1264 (10th Cir. 2006).

[2] During the suppression hearing, the district court asked Agent Withem if the ATF commonly sought consent to search by claiming there had been an anonymous tip regarding bombs and drugs at a premises. Agent Withem testified that although he had never used this tactic before, he knew of other agents who had.

believe there were bombs in the apartment, but Agent Brenneman testified he had planned to say this to Mr. Harrison "in an effort to gain his consent to search." *Id.* at 38. Mr. Harrison replied either that there were no bombs in the apartment, or that he didn't think there were bombs in the apartment. Agent Brenneman then told him, "Well, you know, any time we get a phone call like this, you know, our boss makes us come out and investigate it further and see if there's any threat or danger to the community." *Id.* at 20-21.

Mr. Harrison explained that he did not know if he could give permission because it was his girlfriend's apartment. Agent Brenneman told Mr. Harrison that he could consent because he lived there and had control of the apartment. Agent Withem then assured him, "We're not here to bust you on a bag of weed. . . . We have bigger fish to fry than a small bag of weed." *Id.* at 53. The Agents testified that Mr. Harrison then gave them permission to search the apartment.[3] During the search, Agent Brenneman found a loaded handgun that was hidden in a hole in the drywall underneath a sink.

After hearing the evidence, the district court granted the motion to suppress in an oral ruling. The court found as follows:

> The statement here made was that there was an anonymous tip that there were bombs and drugs at the apartment followed by the statement any time we receive this information our boss makes us

---

[3] There is no evidence Mr. Harrison was told that he had a right to refuse consent to the search.

-4-

check it out. And as for the statement by special Agent Withem that if Harrison had a little bit of weed they were not there to bust him. Again, that is a reassertion that we're not there to bust for a little bit of weed, rather we're looking for bombs and drugs. This is precisely what the founders intended the Fourth Amendment to stop. It is an unreasonable search based upon the totality of the circumstances given the statements by federal law enforcement. . . . The government cannot, particularly when one is an Alcohol, Tobacco, Firearm, and Explosives agent state that we received an anonymous tip that there are bombs here and our boss says we have to check it out.

*Id.* at 84-85. The court explained,

[T]he government can't obtain valid consent to search by placing a person in fear, or making a statement from which a person could be in fear, or suggesting that there may be a threat to a person that lives within a house. . . .
　　Specifically the Court finds that the government has not met its burden of producing clear and positive testimony that the consent here was freely given. . . .
　　As counsel for the defendant states in his brief, if a person doesn't actually have a bomb or know of a bomb in an apartment, then the logical interpretation of the statement is that someone else could have put a bomb or explosive in the premises. For those reasons the motion to suppress is granted.

*Id.* at 85-87. On appeal, the government contends the search was lawful because the Agents used a permissible form of deception to gain consent. It claims the Agents' conduct was not coercive because they did not represent that a bomb had been planted in the apartment, but instead they implied Mr. Harrison was unlawfully possessing drugs and bombs. It further argues Mr. Harrison did not feel subjectively threatened by the Agents, nor did they imply they had lawful authority to search without his consent.

-5-

## II.

"When we review an order granting a motion to suppress, we accept the trial court's factual findings unless clearly erroneous, and we view the evidence in the light most favorable to the district court's finding." *United States v. Zapata*, 997 F.2d 751, 756 (10th Cir. 1993) (internal quotation marks omitted). Whether consent was voluntarily given is a question of fact we review for clear error.[4] *United States v. Silva-Arzeta*, 602 F.3d 1208, 1213 (10th Cir. 2010). We apply the clearly erroneous standard "because the credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters most appropriate for the district court." *United States v. Mendoza-Salgado*, 964 F.2d 993, 1011 (10th Cir. 1992) (internal quotation marks omitted). The ultimate determination of the reasonableness of the search under the Fourth Amendment is a question of law which we review de novo. *Zapata*, 997 F.2d at 756.

---

[4] The government urges us to apply de novo review in this case, claiming, "The question before this Court is whether, as a matter of law, Harrison's consent was coerced, rather than voluntary, because it was preceded by Agent Brenneman's false representation." Aplt. Br. at 22. This misstates the issue. When considering whether consent is voluntary, the presence or absence of a single factor is not controlling. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). The district court stated it had considered the totality of the circumstances, and we do not read its decision as adopting a *per se* rule that the Agents' "drugs and bombs" comment violated the Fourth Amendment. Accordingly, we review the district court's voluntariness finding for clear error.

-6-

A warrantless search of a home is presumptively unreasonable, and evidence obtained from such a search is inadmissible, subject only to a few carefully established exceptions. *Silva-Arzeta*, 602 F.3d at 1213. Voluntary consent to search is one such exception. *Id.* (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). "But the Fourth and Fourteenth Amendments require that a consent not be coerced, by explicit or implicit means, by implied threat or covert force. For, no matter how subtly the coercion was applied, the resulting 'consent' would be no more than a pretext for the unjustified police intrusion against which the Fourth Amendment is directed." *Schneckloth*, 412 U.S. at 228.

The government bears the burden of proving that consent is given freely and voluntarily. *Id.* at 222. "[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Id.* at 227. Relevant considerations

> include physical mistreatment, use of violence, threats, promises, inducements, deception, trickery, or an aggressive tone, the physical and mental condition and capacity of the defendant, the number of officers on the scene, and the display of police weapons. Whether an officer reads a defendant his *Miranda* rights, obtains consent pursuant to a claim of lawful authority, or informs a defendant of his or her right to refuse consent also are factors to consider in determining whether consent given was voluntary under the totality of the circumstances.

*United States v. Sawyer*, 441 F.3d 890, 895 (10th Cir. 2006) (citations omitted).

The government first contends the search of Mr. Harrison's apartment was

reasonable because courts have repeatedly held that the government may use deception to gain entry to a residence. It is true that not all deception or trickery will render a search invalid. For example, "an undercover agent may gain entry to a person's home by deception and purchase narcotics with no violation of the fourth amendment." *Pleasant v. Lovell*, 876 F.2d 787, 802 (10th Cir. 1989) (citing *Lewis v. United States*, 385 U.S. 206, 210 (1966)). But the government's reliance on this line of cases is misplaced. In cases involving undercover police work, the defendant does not know he or she is permitting the government to enter the premises. Unlike the defendants in those cases, Mr. Harrison did not "unwisely repose[] trust in what later turn[ed] out to be a government agent," *Pleasant*, 876 F.2d at 802. Instead, Mr. Harrison *knew* he was opening his home to law enforcement officials who have expertise in explosives. The question is whether the Agents' deceptive tactics in these circumstances rendered his consent involuntary.

Notwithstanding the legality of searches conducted by undercover agents, the "Fourth Amendment can certainly be violated by guileful as well as by forcible intrusions into a constitutionally protected area." *Hoffa v. United States*, 385 U.S. 293, 301 (1966). We have repeatedly held that deception and trickery are among the factors that can render consent involuntary. *See, e.g.*, *Sawyer*, 441 F.3d at 895; *United States v. McCurdy*, 40 F.3d 1111, 1119 (10th Cir. 1994). When government agents seek an individual's cooperation with a government

investigation by misrepresenting the nature of that investigation, this deception is appropriately considered as part of the totality of circumstances in determining whether consent was gained by coercion or duress.[5] We should be especially cautious when this deception creates the impression that the defendant will be in physical danger if he or she refuses to consent to the search.

The government denies the Agents implied Mr. Harrison was in danger. It argues the district court's ruling should be reversed because "Agent Brenneman did not make a false assertion that someone might have planted a bomb in the apartment; rather he made a false accusation of criminality." Aplt. Br. at 26. In other words, the government claims the Agents were accusing Mr. Harrison of violating the law by possessing drugs and bombs in the apartment. The government argues a reasonable person would not have assumed the "drugs and

---

[5] The government relies on *United States v. Kimoana*, 383 F.3d 1215, 1224 (10th Cir. 2004), to bolster its argument that deception does not invalidate a consent to search. It claims the officer in *Kimoana* gained consent to search by falsely claiming to be searching for an automobile key, when in reality the officer wanted to search for weapons. This misconstrues the facts in *Kimoana*. In that case, the officer requesting consent *was* genuinely searching for the key to a stolen automobile, which contained a sawed-off shotgun. *Id.* at 1219. Even if the request to search for the key was a ruse, however, the court did not consider whether such a ruse violated the voluntariness of consent. Instead, the question was whether the search exceeded the scope of consent. Although the officers executing the search were looking for weapons, the court noted that the gun discovered during the search was located in a place where a car key would reasonably fit. *Id.* at 1224. The facts are further distinguishable because the consenting party in *Kimoana* had confessed to stealing the car, *see id.* at 1219, and therefore understood that the officers were searching for evidence of criminality.

bombs" comment meant he or she was in danger.

The district court found this interpretation implausible. The district court, having heard the Agents' testimony regarding their search, is best suited to make inferences, deductions, and conclusions from the evidence presented on the motion to suppress. *See Mendoza-Salgado*, 964 F.2d at 1011. "'Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.'" *United States v. Pikyavit*, 527 F.3d 1126, 1130 (10th Cir. 2008) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985)). Even if the government's interpretation of the Agents' statements were plausible, the district court made a permissible interpretation of the Agents' statements to Mr. Harrison, and we will not disturb this finding. We therefore accept the district court's finding that the Agents' statements implied a bomb may have been planted in the apartment.

Although government agents are not required to advise a defendant that he or she has a right to refuse consent to search, this is one factor considered in the totality of circumstances. *Schneckloth*, 412 U.S. at 249; *see also Sawyer*, 441 F.3d at 895. However, government actions are coercive when they imply an individual has no right to refuse consent to search. *E.g.*, *Bumper v. North Carolina*, 391 U.S. 543, 550 (1968) ("When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion

. . . . Where there is coercion there cannot be consent."); *Edison v. Owens*, 515 F.3d 1139, 1147 (10th Cir. 2008) (holding a statement is coercive when it "indicates that there are punitive ramifications to the exercise of the constitutional right to refuse consent"); *United States v. Medlin*, 842 F.2d 1194, 1198 (10th Cir. 1988) (affirming suppression of evidence because "it seems reasonable that Medlin would have believed when faced by federal and state officers with guns drawn that he had no right to resist" the search); *see also McCurdy*, 40 F.3d at 1119 ("An officer's request for consent to search does not taint an otherwise consensual encounter 'as long as the police do not convey a message that compliance with their request is required.'" (quoting *United States v. Griffin*, 7 F.3d 1512, 1517 (10th Cir. 1993)).

This same principle applies when deceit or trickery is used to imply an individual has no ability to refuse consent. *See, e.g.*, *United States v. Hardin*, 539 F.3d 404, 424-25 (6th Cir. 2008) ("[A]lthough a ruse or officers' undercover activity does not usually violate individuals' rights, we have noted that where, for example, the effect of the ruse is to convince the resident that he or she has no choice but to invite the undercover officer in, the ruse may not pass constitutional muster." (footnote, alteration, and internal quotation marks omitted)); *United States v. Escobar*, 389 F.3d 781, 786 (8th Cir. 2004) (holding consent to luggage search was involuntary when police falsely claimed a drug dog had alerted on the bag, because police may not "convey a message that compliance with their

requests is required").  Not all deceit and trickery is improper, but "when the police misrepresentation of purpose is so extreme that it deprives the individual of the ability to make a fair assessment of the need to surrender his privacy . . . the consent should not be considered valid."  2 Wayne R. LaFave et al., Criminal Procedure § 3.10(c) (3d ed. 2007).

Even the government concedes that just as it would violate the Fourth Amendment for an officer to induce consent by pointing a gun at a suspect, it would also violate the Fourth Amendment for the ATF to induce consent by falsely claiming that someone had planted a bomb in Mr. Harrison's apartment. Aplt. Br. at 25-26.  Under the district court's interpretation of the Agents' statements, this was precisely the effect of the Agents' misrepresentation.  Mr. Harrison reasonably could have believed he and others were at risk of harm if there actually was a bomb in the apartment.  This would have left him with two options: (1) deny consent to search and accept the risk that a bomb had been planted in the apartment; or (2) consent to the search.  Consent under these circumstances cannot be said to be free of coercion.[6]

Finally, the government argues that consent was voluntary because there

_____

[6] The government also argues the Agents did not imply by their conduct that they had lawful authority to search Mr. Harrison's apartment even without his consent.  The district court made no finding that the Agents *were* asserting lawful authority to search without consent, but found circumstances were sufficiently coercive to undermine consent even without such an assertion.  Since we affirm the district court on this ground, we need not consider this argument.

was no evidence that Mr. Harrison felt coerced by their statements. It emphasizes that the Agents did not explicitly tell Mr. Harrison that there was a danger to him or anyone else. Additionally, in the government's view, Mr. Harrison initially disclaimed authority to consent to the search, granted consent only after "it was negotiated with a promise not to prosecute" for a "bag of weed," Aplt. Br. at 15, and he remained in the house during the search without asking to leave the apartment. But, as the district court noted, Agent Brenneman did tell Mr. Harrison they needed to investigate to "see if there's any threat or danger to the community." Aplt. App. at 20-21. Although the Agents may not have explicitly told Mr. Harrison that he was in danger, the district court concluded this was the effect of the Agents' statements. Similarly, Agent Withem's assurance that Mr. Harrison would not be penalized if they found a "bag of weed" only further emphasized that bombs, not drugs, were the focus of their concern.

Nor are we convinced that the district court's judgment is undermined by the lack of evidence that Mr. Harrison felt coerced. Mr. Harrison's willingness to remain inside the apartment during the search does not prove he did not feel threatened by the possibility of a bomb. Mr. Harrison's interpretation of the immediacy of the threat posed by any bombs likely was affected by the dress and demeanor of the ATF Agents. Like Mr. Harrison, the Agents were not wearing protective gear while conducting the search for "drugs and bombs." Given the circumstances, Mr. Harrison reasonably could have believed the Agents would

-13-

evacuate the premises or call the bomb squad if and when explosives were found. Mr. Harrison's apparent willingness to sit in the living room with Agent Withem during the search does not require a finding that he felt no threat by the possibility of a bomb.

Moreover, we have previously affirmed the suppression of evidence from searches when the circumstances were "inherently coercive," without comment as to whether the defendant expressed subjective fear in the situation. *See Medlin*, 842 F.2d at 1198. Although an individual's subjective state is certainly a factor to be considered in analyzing the totality of the circumstances, *Schneckloth*, 412 U.S. at 229, it is but one factor in the analysis, *see United States v. Sanchez-Valderuten*, 11 F.3d 985, 990 (10th Cir. 1993). Even considering Mr. Harrison's reaction to the Agents' "drugs and bombs" statement, the district court did not clearly err in finding the consent was involuntary under the totality of the circumstances.

We emphasize that it is not the defendant's burden to prove that he was, in fact, coerced. Instead, the government bears the burden of showing that the defendant was not coerced. Here the district court found the government failed to meet this burden. This finding is not clearly erroneous.

Accordingly, we **AFFIRM**.