**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 12, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

MARTHA WILSON,

        Plaintiff-Appellee,

and

TIMOTHY CHABOT,

        Plaintiff,

v.

Albuquerque Police Officers JENNIFER
JARA and DANIEL VAZQUEZ,

        Defendants-Appellants.

No. 11-2231
(D.C. No. 1:10-CV-00797-JB-WPL)
(D. N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **ANDERSON** and **BALDOCK**, Circuit Judges, and **BRORBY**, Senior Circuit
Judge.

---

    Martha Wilson filed a 42 U.S.C. § 1983 action alleging that Albuquerque

police officers Jennifer Jara and Daniel Vazquez unlawfully seized her, entered her

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

home, and arrested her. The district court granted Ms. Wilson's motion for summary judgment on her claim that the officers unlawfully seized her, thereby rejecting the officers' claim of qualified immunity, but the court denied summary judgment as to the other two claims. *Wilson v. Jara*, 866 F. Supp. 2d 1270, 1275, 1295-96, 1304 (D. N.M. 2011). Those two remaining claims and the issue of damages were presented to a jury. The jury found that the officers did not unlawfully arrest Ms. Wilson or unlawfully enter her home; but the jury awarded her compensatory and punitive damages against the officers for the unlawful seizure. On appeal, the officers argue that (1) they were entitled to qualified immunity on the unlawful-seizure claim because Ms. Wilson was not seized within the meaning of the Fourth Amendment; (2) the district court erred in admitting irrelevant and prejudicial testimony at trial; (3) the court erred in instructing the jury on punitive damages; and (4) the court erred in refusing to give certain of their proposed instructions. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

BACKGROUND

On August 16, 2007, Ms. Wilson's daughter Haley Chabot called 911 to report a fight at the apartment where she lived with her mother and brother, Timothy Chabot.[1] Haley stated during the call that Timothy was drunk, fighting with her male

---

[1]     Because Ms. Wilson filed the motion for summary judgment, we view the facts and draw reasonable inferences from those facts in light of the officers, the nonmoving parties. *See Brosseau v. Haugen*, 543 U.S. 194, 195 n.2 (2004) (per curiam).

- 2 -

friend, destroying property, and grabbing and yelling at Ms. Wilson. Two neighbors also called 911 about the fighting and noise. Officers Jara and Vazquez were dispatched to investigate. Upon arriving at the apartment complex, Officer Jara spoke with Haley, who was outside the apartment. Haley described the fight, which had taken place an hour and a half to two hours before the officers arrived. She stated that Timothy spat on her head twice, that he was still in the apartment, and that he was intoxicated. Based on the spitting, the officers decided that this was a domestic violence situation, for which they had probable cause to arrest Timothy. Haley told the officers that she did not intend to return to the apartment that evening.

The officers proceeded to the apartment, where Ms. Wilson responded to their knock. At that time, all was calm. Officer Jara informed Ms. Wilson that she had spoken with Haley. Ms. Wilson denied that any domestic violence had occurred, but she conceded that there had been a fight between Timothy and Haley's friend. The officers asked to talk to Timothy. Ms. Wilson stated several times that he was in bed, not doing anything. She also told the officers that she was not going to allow them to enter the apartment, Taser him, and drag him out of the apartment. The officers assured her that they had no intention of using a Taser. After further discussion, the officers informed Ms. Wilson that she was not abiding by the law, and they ordered her to get her son or they would enter the apartment to get him. After further

- 3 -

conversation, Ms. Wilson went to get her son, leaving the apartment door open.[2]

Timothy came to the door and stood in the doorframe. The officers ordered him to go downstairs outside the apartment to speak with them. He declined. The officers reached into the apartment to arrest Timothy, and Ms. Wilson grabbed Officer Vazquez's arm. The officers arrested Timothy and took him downstairs. Officer Jara told Ms. Wilson not to follow them or she would be arrested; Ms. Wilson followed them anyway. After she continued to disobey the officers' orders, she was arrested for battery on a police officer, disorderly conduct, and resisting arrest/obstructing justice. Later, all charges were dismissed.

Ms. Wilson filed a § 1983 complaint in New Mexico state court against the officers alleging violations of her Fourth Amendment rights, including unlawfully seizing her in her home, unlawfully entering her home, and unlawfully arresting her.[3] The officers removed the case to federal court. Ms. Wilson moved for partial summary judgment. The officers responded that they were entitled to qualified immunity. The district court ruled that the officers violated Ms. Wilson's Fourth Amendment rights and were not entitled to qualified immunity because they seized

---

[2]    Officer Jara testified at her deposition that she would not have allowed Ms. Wilson to close the door. Officer Jara also testified that although Ms. Wilson did not consent to the officers going into the apartment, they had a right to do so under the Fourth Amendment and Albuquerque policy and procedure and training because this was a domestic violence situation.

[3]    Ms. Wilson also asserted an excessive-use-of-force claim, but she later dropped it.

her in her home by informing her that she was breaking the law, by ordering her to retrieve her son, and by threatening to get him if she did not comply with their order. *Wilson*, 866 F. Supp. 2d at 1296-1301. The court decided, however, that there were factual disputes concerning the claims of unlawful entry into the home and unlawful arrest. *Id*. at 1301-03. Lastly, the court concluded, contrary to the officer's argument, that the New Mexico Family Violence Protection Act, N.M. Stat. Ann. § 40-13-7, did not limit Ms. Wilson's possibility for recovery under § 1983.[4] *Wilson*, 866 F. Supp. 2d at 1303-04.

A jury trial was held on the unlawful entry and arrest claims and on damages. During trial, but over the officers' objections, the court admitted, as probative for punitive damages, testimony about the officers' subjective beliefs, what they would do if confronted with this situation again, training offered by the Albuquerque Police Department after this incident, and misconceptions within the Department. Also over the officers' objections, the court instructed on punitive damages. The court declined the officers' instructions on the Fourth Amendment objective standard applicable to officers' conduct, their duties under the New Mexico Family Violence Protection Act, and their duty to investigate under New Mexico law.

---

[4] The Act, in relevant part, provides that "[a]ny law enforcement officer responding to the request for assistance under the Family Violence Protection Act is immune from civil liability to the extent allowed by law." N.M. Stat. Ann. § 40-13-7(D).

The jury found in the officers' favor on the unlawful entry and arrest claims, and for the unlawful seizure of Ms. Wilson awarded $7,500 in compensatory damages against both officers and $30,000 in punitive damages against Officer Jara and $30,000 in punitive damages against Officer Vazquez. The officers appealed.

The same day the notice of appeal was filed, Ms. Wilson's counsel moved to withdraw. Proceeding pro se,[5] she filed post-conviction motions, which were denied. She did not file a cross-appeal.

ANALYSIS

I

The officers argue that the district court erred in granting Ms. Wilson's motion for partial summary judgment and denying them qualified immunity. They contend that she was not seized within the meaning of the Fourth Amendment because she did not submit to a show of authority, the officers did not intend to stop her freedom of movement, and there was a question of fact as to whether a reasonable person in her position would have felt free to decline the officers' request or to terminate the encounter. And they contend that, even if they violated Ms. Wilson's Fourth Amendment rights, no authority put them on notice that their encounter with Ms. Wilson constituted a seizure.

---

[5]     We construe Ms. Wilson's pro se filings liberally. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

"We review a district court's decision to grant summary judgment de novo, applying the same standard as the district court." *Lundstrom v. Romero*, 616 F.3d 1108, 1118 (10th Cir. 2010) (internal quotation marks omitted). Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and [she] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> In contrast to a standard motion for summary judgment, which places the burden on the moving party to point out the lack of any genuine issue of material fact for trial, a motion based on a claim of qualified immunity imposes the burden on the plaintiff to show both that a constitutional violation occurred and that the constitutional right was clearly established at the time of the alleged violation.

*Lynch v. Barrett*, 703 F.3d 1153, 1158 (10th Cir. 2013) (internal quotation marks omitted).

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244 (2012) (internal quotation marks omitted). We have discretion to decide whether to address the constitutional-violation prong or the clearly-established-law prong first,

*Pearson*, 555 U.S. at 236; here, we first consider whether there was a constitutional violation and then consider whether the law was clearly established.

"The Fourth Amendment prohibits unreasonable seizures by law enforcement officers." *United States v. Salazar*, 609 F.3d 1059, 1064 (10th Cir. 2010) (citing U.S. Const. amend. IV). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *United States v. Mendenhall*, 446 U.S. 544, 552 (1980) (internal quotation marks omitted). When there is no show of physical force, a seizure occurs only if the officer asserts authority and the citizen submits to that authority. *Salazar*, 609 F.3d at 1064.

The test for a show of authority is an objective test: "whether the officer's words and actions would have conveyed . . . to a reasonable person" that she was being ordered to restrict her movement. *California v. Hodari D.*, 499 U.S. 621, 628 (1991). In other words, "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that [s]he was not free to leave." *Mendenhall*, 446 U.S. at 554. A seizure may occur even if a person does not attempt to leave where an officer threatens or uses language or a tone of voice ordering the person to comply with the officer's request. *Id.*

Officers Jara and Vazquez contend that the district court erred in deciding Ms. Wilson submitted to a show of authority. They submit that she was not touched,

no weapons were displayed, they were the only officers present, and they spoke to her in a normal tone of voice. They maintain their mere words directing her to get her son were insufficient for a seizure. Further, pointing to the fact that she initially ignored their assertion of authority, they suggest that she did not submit to their authority.

The officers, however, fail to recognize that Ms. Wilson submitted to their authority after they told her that she was disobeying the law and that if she did not get her son they would go into the apartment and get him. She consented to get her son, even though it is clear that she would have preferred to refuse, because the officers conveyed the message that compliance with their request was required. *See Florida v. Bostick*, 501 U.S. 429, 438 (1991).

The officers also contend that they did not intend to terminate Ms. Wilson's freedom of movement. Rather, they submit that their statement that they would go in and get Timothy if she did not get him was merely a ruse, not a threat, and did not constitute a seizure because they did not demand, intimidate, threaten, use force, or enter her apartment during the initial encounter and they did not restrict her from leaving the apartment. Also, they submit they had no intention of seizing her; they merely wanted to contact Timothy.

Contrary to their argument, the officers' conduct and words would have conveyed to a reasonable person that she was restricted in her freedom of movement. *See Hodari D*., 499 U.S. at 628. And it can be concluded that Ms. Wilson submitted

to their authority. *See Salazar*, 609 F.3d at 1064. If the officers used a ruse, it was used to suggest that Ms. Wilson could not refuse to consent, and it deprived her of her ability to choose whether to consent. *See United States v. Harrison*, 639 F.3d 1273, 1280 (10th Cir. 2011).

Lastly, the officers contend that there was a question of fact whether a reasonable person would have felt free to decline their order or to terminate the encounter. Under the totality of the circumstances, including the officers' tone of voice, Ms. Wilson's tone of voice, the forty-five second delay between the directive to get her son and her deciding to do so, and the interruptions and arguments made by Ms. Wilson, the officers argue that a jury should have decided whether she would have felt free to decline the request to retrieve Timothy.

As the district court determined, Ms. Wilson faced a direct command a reasonable person would expect she had to obey; no reasonable person would believe she was free to terminate the encounter or disobey the order, especially in light of the officers' persistence and informing her that she was not abiding by the law and that if she did not get her son the officers would do so. *See Bostick*, 501 U.S. at 436; *United States v. Williams*, 356 F.3d 1268, 1274-75 (10th Cir. 2004). Ms. Wilson was faced with the choice of either getting her son or having the officers enter her home to get him. In effect, they implied that she had no right to refuse to get Timothy. *Cf. Harrison*, 639 F.3d at 1279 ("Although government agents are not required to advise

a defendant that . . . she has a right to refuse consent to search, this is one factor considered in the totality of circumstances.").

Because the district court was correct in finding that Ms. Wilson was seized by the officers' conduct in violation of the Fourth Amendment, we next consider whether it was clearly established that their conduct violated her Fourth Amendment rights.  *See Eidson v. Owens*, 515 F.3d 1139, 1148 (10th Cir. 2008).  An officer will be shielded from liability if his or her "actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal quotation marks omitted).  Thus, an officer must be on notice that conduct is unlawful.  *Id*.

> For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Id*. (citation omitted) (internal quotation marks omitted); *see also Ashcroft v. al-Kidd,* 131 S. Ct. 2074, 2083 (2011) ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate); *Eidson*, 515 F.3d at 1148 (stating that for clearly established law, facts of cases need not be identical, but they must be sufficiently analogous).  The inquiry is made in light of the specific context of the case.  *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam).  Clearly established law, however, is not defined at a high level of generality.  *al-Kidd*, 131 S. Ct. at 2084.

- 11 -

The officers argue that even if they seized Ms. Wilson in violation of the Fourth Amendment, there was no clear authority putting them on notice that without action or use or display of force there was a seizure. We disagree. In the context of this case, it is clear that the officers knew or should have known their conduct was unlawful. It is clearly established that a person has a right to be free from a warrantless seizure in the person's home. *See Manzanares v. Higdon*, 575 F.3d 1135, 1142, 1146-47 (10th Cir. 2009). Officer Vazquez conceded that he knew the officers did not have a legal right to enter Ms. Wilson's home, yet he proceeded to inform her that she was disobeying the law and if she did not let the officers in, they would go into the apartment, even though he had no intention of doing so. He also knew that the Fourth Amendment could not be ignored despite the state domestic violence law. As the district court correctly determined, it is clearly established that Ms. Wilson was seized when she submitted to the order to get Timothy because she had a right to be free from warrantless seizures in her home, absent exigent circumstances. We conclude that the district court correctly determined that the officers were not entitled to qualified immunity, and the court properly granted summary judgment to Ms. Wilson.

## II

The officers next argue that the district court abused its discretion in admitting irrelevant and prejudicial testimony, namely allowing inquiry as to whether the officers would have acted differently knowing what they now know, about

misconceptions within the Albuquerque Police Department, and about any training the Department provided after this incident. The officers contend the questioning about how the officers would have acted in hindsight was impermissible because an officer's subjective beliefs are not relevant to a Fourth Amendment inquiry. They maintain that the questions concerning misconceptions and training were irrelevant because Ms. Wilson did not assert a claim against the City of Albuquerque.

The district court overruled the officers' objections to the lines of inquiry on the ground that the questions were probative for the punitive damages claim. *See* Fed. R. Evid. 401 (stating relevant evidence tends "to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action"); Fed. R. Evid. 403 (permitting court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice").

We review a district court's decision to admit evidence for an abuse of discretion. *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 968 (10th Cir. 2001). "Our deferential review applies both to a trial court's threshold determination of relevance under Rule 401 and to its conclusion under Rule 403" regarding prejudice. *Tanberg v. Sholtis*, 401 F.3d 1151, 1162 (10th Cir. 2005). "A district court abuses its discretion when it renders an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *Ralston*, 275 F.3d at 968 (internal quotation marks omitted). We will not disturb the district court's decision unless we have "a

definite and firm conviction that the . . . court has made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Id*. at 968-69 (internal quotation marks omitted).

Considering relevance and prejudice in the full context of the case, *see Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008), we conclude that the district court did not abuse its discretion. Officer Vazquez testified at trial that he knew at the time of the encounter with Ms. Wilson that his entering the apartment to get Timothy would have violated the Fourth Amendment, so he attempted to persuade Ms. Wilson to get Timothy. This concession, as the district court ruled, had relevance as to whether the jury should find him liable for punitive damages. Further, Officer Vazquez conceded that there was no emergency at the time of the encounter, the officers had no warrant, and the United States Constitution controls over state law. And he admitted he had not been trained by the Albuquerque Police Department to persuade a citizen to do something by telling them he was going to do something he cannot do.

Officer Jara, on the other hand, testified that she thought she and Officer Vazquez had legal authority to tell Ms. Wilson that if she did not get Timothy the officers would go into the apartment to get him, and it was not until later that she learned otherwise. Also, she later learned the Ms. Wilson was abiding by the law. But she conceded that Ms. Wilson exercised a constitutional right by stating she was not going to get her son and that she did not commit a crime by initially refusing to

get him. Nonetheless, Officer Jara maintained that domestic violence calls are treated differently than other calls, and she did not know how she would act if presented with the same situation again, because she believed that she was acting in good faith.

Considering the officers' testimony in total, we cannot conclude that the district court abused its discretion in allowing admission of the evidence as relevant and probative for the punitive damages claim.

### III

The officers argue that the instruction on punitive damages should not have been given because no reasonable juror could find as a matter of law that they acted with malice or reckless disregard.[6] Rather, they contend that they respected Ms. Wilson's rights by not entering her home until they arrested Timothy. In addition, they note that they told her they were there to conduct an investigation, they allowed her to disappear from view when she went to get Timothy, they remained calm, they used no force against her during the initial encounter, and they used force against her only after she attacked them.

The punitive-damage instruction stated that the jury could award punitive damages if "the conduct of a defendant was malicious, willful, reckless, wanton,

---

[6] Because the officers do not argue that the punitive damages award was excessive when compared to the compensatory damages award, we do not address the issue.

fraudulent or in bad faith." Aplt. App., Vol. I at 279. The instruction defined the

first four terms:

> Malicious conduct is the intentional doing of a wrongful act with knowledge that the act was wrongful.

> Willful conduct is the intentional doing of an act with knowledge that harm may result.

> Reckless conduct is the intentional doing of an act with utter indifference to the consequences.

> Wanton conduct is the doing of an act with utter indifference to or conscious disregard for a person's rights or safety.

*Id*.

Our prior discussion of the evidence confirms that a reasonable juror could

find that the officers so acted. Thus, the district court did not abuse its discretion in

giving the punitive-damages instruction. *See Medlock v. Ortho Biotech, Inc*.,

164 F.3d 545, 552 (10th Cir. 1999) (reviewing district court's decision to give jury

instruction for abuse of discretion).[7]

## IV

Lastly, the officers argue that the district court erred in rejecting three of their

proffered instructions, which would have informed the jury about: (1) the Fourth

Amendment objective evidence test, which provides that the reasonableness of an

---

[7] Additionally, we note that the officers failed, as is required, to cite to the record or to legal authority in their argument concerning this issue, as well as the next. *See* Fed. R. App. P. 28(a)(9)(A) (requiring argument section to contain citation to authority and record relied on by appellant).

officer's conduct is assessed from the perspective of a reasonable officer at the scene; (2) their duty to investigate all crimes coming to their attention, as required by N.M. Stat. Ann. § 29-1-1; and (3) their obligations with respect to the New Mexico Family Violence Protection Act. According to the officers, their proposed instructions would have minimized prejudice caused by the improper testimony contested in section II above and would have cleared up concerns about punitive damages.

The district court appropriately declined to give the Fourth Amendment instruction because it was relevant to the dropped excessive force claim. Furthermore, the officers argued to the district court only that the instruction should be given with respect to the unlawful arrest and entry claims; they did not argue it was relevant to the damages issues remaining for the seizure claim. Also, the court appropriately declined to give the investigation instructions. "Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 . . . cannot be immunized by state law. *Martinez v. California*, 444 U.S. 277, 284 n.8 (1980). We conclude the district court did not abuse its discretion by declining to give the proposed jury instructions. *See Quigley v. Rosenthal*, 327 F.3d 1044, 1062 (10th Cir. 2003) (recognizing we review for an abuse of discretion).

V

Ms. Wilson argues that the district court erred in denying her request for free transcripts under 28 U.S.C. § 753(f), thereby denying her an opportunity to file a

cross appeal.  In addition, she asks this court to order that the transcripts be provided.

Section 753(f) applies to persons appealing in forma pauperis.  Ms. Wilson paid her

filing fees in district court and in this court and is therefore not proceeding in forma

pauperis.  Accordingly, we conclude she is not entitled to free transcripts.

CONCLUSION

The judgment of the district court is affirmed.  Upon the officers' request, we

strike the items in Ms. Wilson's supplemental appendix that were not before the

district court.  *See* Fed. R. App. P. 10(a) (stating documents filed in district court,

transcripts, and district court docket sheet constitute record on appeal).

Entered for the Court

Stephen H. Anderson
Circuit Judge