FILED
United States Court of Appeals
Tenth Circuit

**February 3, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

STEVEN SHOBERT,

    Defendant - Appellant.

No. 24-8058
(D.C. No. 2:23-CR-00153-SWS-1)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, Chief Judge, **PHILLIPS**, and **CARSON**, Circuit Judges.
_____

When a defendant consents to a warrantless search of his home, the search does not violate the Fourth Amendment. To determine whether a defendant consented voluntarily, we look at the totality of the circumstances. We review a district court's voluntariness determination for clear error, construing the evidence in the light most favorable to the government.

After Defendant Steven Shobert suffered an alcohol withdrawal seizure while in custody, officers sought his consent to search his home so he could receive a medical furlough and stay in the hospital unaccompanied by officers. Defendant

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

consented, and officers found several weapons at his home, including a fully automatic rifle. Defendant moved to suppress the evidence officers found in his home, arguing that he did not voluntarily consent to the search. The district court denied the motion, which Defendant now appeals. Our jurisdiction arises under 28 U.S.C. § 1291. We affirm.

I.

Worland, Wyoming, is a small town. So it is no surprise that Defendant personally knew members of local law enforcement. Wanting to discuss information he had on a missing person case, Defendant drove to off-duty Worland police officer Andrew Cady's home. When Defendant arrived, Officer Cady noticed that he appeared intoxicated and carried a pistol in a hip holster. At one point, Defendant offered to show the pistol to Officer Cady and pulled it from the holster with the barrel pointed at the home. Officer Cady's wife and children were inside. Officer Cady texted his wife to call the police. Officers from the Washakie County Sheriff's Office and the Worland Police Department responded to the call. Officers disarmed Defendant without incident and arrested him for driving while under the influence.

The next morning, Defendant appeared in the Washakie County Circuit Court. The court set a cash bond and a bond condition requiring Defendant to relinquish to law enforcement all weapons and ammunition. Defendant did not pay the cash bond, so he remained in custody. Later that morning, Defendant suffered an alcohol withdrawal seizure. An ambulance transported Defendant to the hospital. About five minutes later, hospital staff administered a sedative, lorazepam, to Defendant to treat

the symptoms caused by his alcohol withdrawal.  Hospital staff administered a second dose about twenty minutes later.

While in the emergency room, Defendant neither lost consciousness nor experienced the sedative effects of the lorazepam.  Indeed, hospital staff and Sheriff's Deputy Colleen McClain observed his mental condition improve as time passed.  He asked Deputy McClain, who accompanied him to the hospital, to explain what happened to him.  Defendant repeatedly apologized to her for appearing at Officer Cady's house the previous day.  He had multiple conversations with Deputy McClain, and she considered him responsive and coherent.

Deputy McClain remained with Defendant at the hospital.  But her presence placed a considerable burden on the sheriff's department, which only had two officers covering Washakie County that day.[1]  Because of this burden, Sergeant Michael Oberth contacted the county attorney about Defendant receiving a medical furlough.  The furlough would have allowed Defendant to remain at the hospital unsupervised, freeing up Deputy McClain to respond as needed throughout the county.

A little over an hour after hospital staff administered Defendant's second dose of lorazepam, Sergeant Oberth arrived at the hospital's emergency room to discuss the medical furlough with Defendant.  During the conversation, Defendant laid in a

---

[1] Washakie County encompasses more than 2,200 square miles of land.  Thus, on the day in question, only two officers were available to respond in an area larger than the states of Delaware or Rhode Island.

hospital bed in a room with large, sliding glass doors. The doors remained open, allowing medical staff to come and go as well as see into the room. Officers did not handcuff or otherwise restrain Defendant. Neither Sergeant Oberth nor Deputy McClain, both of whom were in uniform, brandished a weapon. Sergeant Oberth observed that Defendant was completely sober, coherent, and responsive, and he believed Defendant understood the nature of the conversation. He and Deputy McClain described the conversation as cordial and calm.

Sergeant Oberth explained to Defendant that his bond conditions required him to surrender his weapons before he could be furloughed. Because of Defendant's hospitalization and the immediate need for the furlough, Sergeant Oberth sought Defendant's consent to enter his home and remove his firearms. Defendant initially asked to accompany the officers to his home because his firearms were in several locations and he wanted to take care of certain items himself, but he ultimately consented to the search. The Washakie County Circuit Court granted Defendant the medical furlough, which required him to immediately return to the county detention center upon release from the hospital.

The search of Defendant's home uncovered twenty-three firearms, various firearm parts and accessories, and ammunition. Among the firearms, officers located firearms that Defendant appeared to possess in violation of federal law, including one equipped with a conversion device allowing the firearm to automatically fire multiple rounds with a single trigger pull and one unregistered short-barreled rifle.

4

Two days later, the hospital discharged Defendant.  But he failed to check in with law enforcement as required by his furlough.  Four months later, officers arrested and charged Defendant with one count of possessing a machine gun under 18 U.S.C. § 922(o) and one count of possessing an unregistered short-barreled rifle under 26 U.S.C. § 5861(d).

Defendant moved to dismiss both charges and sought to suppress the evidence found in the search of his home.  He argued that officers coerced his consent, thus rendering it involuntary.  He also sought to dismiss both charges because 18 U.S.C. § 922(o) and 26 U.S.C. § 5861(d) violated the Second Amendment.  The district court denied Defendant's motion to suppress, finding that he voluntarily consented to the search of his home.  The district court also denied Defendant's motions to dismiss.

With his motions denied, Defendant pled guilty to possessing a machine gun but reserved the right to appeal the denial of his motions.  The government dropped the charge for possession of an unregistered short-barreled rifle.  The district court sentenced Defendant to eighteen months' imprisonment.  Defendant timely appealed.

II.

When we review a district court's denial of a motion to suppress, we view the evidence in the light most favorable to the government.  United States v. Cortez, 965 F.3d 827, 833 (10th Cir. 2020) (quoting United States v. McNeal, 862 F.3d 1057, 1061 (10th Cir. 2017)).  We "accept the district court's findings of fact unless they are clearly erroneous . . . ."  Id.  Whether a defendant voluntarily consented to a

search is a question of fact that we review for clear error.  United States v. Harrison, 639 F.3d 1273, 1277 (10th Cir. 2011) (citing United States v. Silva-Arzeta, 602 F.3d 1208, 1213 (10th Cir. 2010)).

Defendant raises two issues on appeal.  First, he challenges the district court's finding that he voluntarily consented to the search of his home.  He claims that Sergeant Oberth coerced his consent by conditioning his medical treatment on the relinquishment of his firearms.  Second, Defendant argues that the district court should have dismissed the charge for possessing a machine gun because 18 U.S.C. § 922(o) violates the Second Amendment.  We recently addressed and rejected Defendant's second argument in United States v. Morgan, 150 F.4th 1339 (10th Cir. 2025).  Thus, we summarily affirm as to that issue.  We also affirm the district court's finding that Defendant voluntarily consented to the search of his home.

A.

The Fourth Amendment protects the right to be free from "unreasonable searches and seizures . . . ."  U.S. Const. amend. IV.  Although warrantless searches are generally unreasonable, consent is a well-established exception to the warrant requirement.  Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973) (citing Davis v. United States, 328 U.S. 582, 593–594 (1946)).

The government must pass a two-pronged test for consent: "(1) the law enforcement officers must receive either express or implied consent, and (2) that consent must be freely and voluntarily given."  United States v. Latorre, 893 F.3d 744, 756 (10th Cir. 2018) (quoting United States v. Jones, 701 F.3d 1300, 1317

6

(10th Cir. 2012)).  We determine whether a defendant freely and voluntarily consented based upon the totality of the circumstances.  Id. (quoting Schneckloth, 412 U.S. at 227).  We consider any "physical mistreatment, use of violence, threats, promises, inducements, trickery, or an aggressive tone, the physical and mental condition and capacity of the defendant, the number of officers on the scene, and the display of weapons."  Id. (quoting Jones, 701 F.3d at 1318).

B.

Defendant relies on the second prong of the analysis, asserting that the district court clearly erred in determining that he consented voluntarily.  He contends that Sergeant Oberth misled him into thinking that he had to relinquish his firearms to receive the medical furlough.  He also argues that the district court erred in finding that Sergeant Oberth did not condition Defendant's medical treatment on receiving the furlough.  Both arguments fail.

First, Defendant asserts that the district court erred by not considering that the furlough did not require him to relinquish his firearms.  Because the furlough order did not expressly include this requirement, he argues that Sergeant Oberth induced his consent with false information.  But Defendant's argument ignores other evidence before the district court, namely Sergeant Oberth's testimony that the county attorney told him that Defendant would have to comply with the bond requirements—including the relinquishment of his firearms—to receive the furlough, which the district court found credible.  And we are "loath to second-guess a district court's determination of a witness's credibility."  United States v. Asch, 207 F.3d 1238, 1243

7

(10th Cir. 2000) (citing Anderson v. Bessemer City, 470 U.S. 564, 575 (1985)). Thus, the district court did not clearly err in finding that Defendant's consent was voluntary, even without the relinquishment requirement being written into the furlough order.

Defendant's arguments also discount the totality of the circumstances. In assessing the factors above, the totality of the circumstances suggests Defendant consented voluntarily. Defendant did not suffer any physical mistreatment or threat of violence. Officers did not handcuff or otherwise restrain him. Nothing in the record indicates that Sergeant Oberth spoke aggressively to Defendant or threatened him in any way. Only Sergeant Oberth and Deputy McClain were present and, although in uniform, neither produced nor used a weapon. The officers did not seclude Defendant during the conversation, and the general environment did not suggest coercion. To the contrary, officers communicated with Defendant in a room with open sliding glass doors which faced the nurse's station. And medical staff could come and go during the exchange.

Defendant's physical and mental condition also did not render his consent involuntary.[2] The government presented evidence, through the doctor's testimony and CT scans, that Defendant did not suffer a head or brain injury as a result of the seizure. Deputy McClain testified that Defendant asked her questions and apologized multiple times for his actions at Officer Cady's house, showing that he could process

---

[2] Importantly, Defendant does not argue that lorazepam made him incapable of consent, only that we should consider it as part of the totality of the circumstances.

memories. And he talked and answered questions appropriately when Sergeant Oberth arrived to speak with him. Defendant also appeared to understand Sergeant Oberth's request to search, as he asked to accompany officers to assist them and take care of specific items. On this record, the district court did not clearly err in finding that the totality of the circumstances showed that Defendant voluntarily consented.

Instead, Defendant argues that, despite the totality of the circumstances, the district court clearly erred because Sergeant Oberth conditioned Defendant's medical treatment on his consent to the search of his home. But nothing in the record shows that Sergeant Oberth expressly conditioned Defendant's continued medical care on his consent.[3] Because the record is unclear as to exactly what Sergeant Oberth said to Defendant, we must view the evidence in the government's favor. See Cortez, 965 F.3d at 833 (citing McNeal, 862 F.3d at 1061). The reason for the medical furlough was the sheriff's office short staffing, and Sergeant Oberth explained that to Defendant when requesting his consent. Sergeant Oberth did not ask for Defendant's consent in bad faith or for nefarious reasons. Perhaps, in hindsight, Sergeant Oberth could have been clearer with Defendant that his medical treatment would continue even without the medical furlough. But when we consider the totality of the

---

[3] Deputy McClain most clearly recounted the conversation. She testified that Sergeant Oberth told Defendant: "If you'll allow us to go in and get your firearms from your house and keep them as safekeeping at the law enforcement center until your trial is over with, then we can do a medical furlough so that you can get the treatment that you need." But even this phrasing, especially when we view it in the light most favorable to the government, does not show that Sergeant Oberth expressly conditioned medical care on Defendant's consent.

circumstances and view the evidence in the light most favorable to the government, as we must, the district court did not clearly err in finding that Sergeant Oberth did not condition Defendant's medical treatment on his consent.

AFFIRMED.

Entered for the Court


Joel M. Carson III
Circuit Judge